IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RACHEL HAWKINS,[1] | § | |
| | § | No. 517, 2017 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File Nos. CN15-02932 |
| DEPARTMENT OF SERVICES FOR | § | 16-11-02TN |
| CHILDREN, YOUTH AND THEIR | § | |
| FAMILIES OF THE STATE OF | § | Petition Nos. 15-16125 |
| DELAWARE, | § | 16-35570 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 20, 2018
Decided: June 5, 2018

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

# **O R D E R**

This 5th day of June 2018, upon consideration of the appellant's brief under

Supreme Court Rule 26.1(c), her attorney's motion to withdraw, the responses of the

Department of Services for Children, Youth, and their Families, Division of Family

Services ("DFS") and the Office of the Child Advocate ("OCA"), and the record

below,[2] it appears to the Court that:

---

[1] The Court previously assigned pseudonyms to the appellants under Supreme Court Rule 7(d).
[2] On May 11, 2018, the appellant's counsel filed a motion for leave to file additional points of the Mother in reply to the responses of DFS and OCA. Rule 26.1(c) does not provide for the filing of reply points. After reviewing the additional points, which consist of matters the appellant had already raised or could have raised in her initial points, we find no basis for reply points in this appeal. The motion for leave to file reply points is therefore denied.

(1) The respondent-appellant, Rachel Hawkins ("the Mother"), has filed an appeal from the Family Court's decision, dated November 6, 2017, terminating her parental rights to her daughter ("the Child"), who was born on June 24, 2014. DFS originally filed a petition for an emergency *ex parte* order granting custody of the Child to DFS on June 5, 2015. The petition arose from the Mother, who had a history as a domestic violence victim of the Child's father ("the Father"), a history of substance abuse and mental health issues, and an extensive history with DFS, testifying during a protection from abuse ("PFA") hearing that she had only applied for a PFA against the Father because DFS made her do it, she loved the Father, and she wanted to reunite with him after couples counseling. The Family Court granted the petition and scheduled a preliminary protective hearing. On June 11, 2015, the Family Court appointed a court appointed special advocate ("CASA") to represent the Child.

(2) At the preliminary protective hearing on June 17, 2015, the Family Court appointed counsel to represent the Mother and the Father. The Mother stipulated to probable cause of dependency for the Child due to lack of stable housing. The Father, who was incarcerated and prohibited from contact with the Mother and the Child, also stipulated to probable cause of dependency. The Family Court found probable cause to believe the Child was dependent. The Family Court also found that DFS made reasonable efforts to prevent the unnecessary removal of

2

the Child from her home. The Mother was awarded biweekly visitation with the Child.

(3) On August 26, 2015, the Family Court held an adjudicatory hearing. The Family Court found that the Child was dependent based on the Mother's stipulation to a history of domestic violence and the Father's incarceration. The Family Court also found that DFS was making reasonable efforts at reunification and to find an appropriate relative caretaker. There were indications that the Mother's brother might file a petition for guardianship.

(4) On October 6, 2015, the Family Court held a dispositional hearing. The Mother did not appear for the hearing. The Family Court found that the Mother's case plan, which the Mother had previously signed, was appropriate. The Family Court ordered DFS to prepare a case plan for the Father. The Mother's case plan provided, among other things, that the Mother would participate in counseling for domestic violence victims and have no contact with the Father, complete a substance abuse evaluation and receive treatment if recommended by the evaluation, speak with a counselor whenever she felt stressed or overwhelmed, take any prescribed medication and meet with a therapist if necessary, obtain appropriate housing, and seek employment.

(5) On November 16, 2015, the Family Court held a review hearing. The Family Court continued to find the Child to be dependent and that DFS was making

3

reasonable efforts at reunification. There was a lapse in the Mother's substance abuse treatment due to her relocation from downstate to upstate. The Mother was working on her case plan and having supervised visits with the Child. A case plan was entered for the Father.

(6) On February 9, 2016, the Family Court held another review hearing. The Family Court continued to find the Child to be dependent and that DFS was making reasonable efforts at reunification. The Mother had a mental health evaluation and was prescribed medication in October 2015. In November 2015, the Mother informed DFS that she was going to admit herself to Bowling Green for 15-20 days because she was depressed and using alcohol. She did not do so, however, and gave differing accounts as to why she had not admitted herself.

(7) The Mother said she had previously been diagnosed with Bi-Polar Disorder, Post Traumatic Stress Disorder, and Major Anxiety Disorder. She also said that she was involved with the ACT Program at Connections and had begun receiving outpatient mental health services from Rockford in January 2016. The Mother was willing to sign release forms so DFS could verify these claims. The Mother also said her brother was willing to be a placement resource for the Child.

(8) On April 22, 2016, the Family Court held another review hearing. The Mother had been working on her case plan, but DFS had concerns about the consistency of her treatment. The Mother had missed multiple sessions with ACT

4

and her domestic violence counselor. The Mother said that DFS had concerns about her brother's housing. Her brother had been unable to visit the Child due to his work schedule; he could only do visits on nights and weekends.

(9) On April 29, 2016, DFS filed a motion to change the goal from reunification to a concurrent goal of reunification and termination of parental rights/adoption because the parents had not completed their case plans. The Family Court granted the motion after receiving no objection from counsel.

(10) On July 26, 2016 and August 23, 2016, the Family Court held a permanency hearing. The Family Court found that the Child continued to be dependent and DFS was making reasonable efforts to finalize the permanency plan. The Mother was receiving treatment for her mental health and substance abuse issues with the ACT Program at Horizon House. DFS expressed concern that the Mother kept changing her mental health and substance abuse service providers. The Mother was also receiving counseling as a victim of domestic violence.

(11) On November 4, 2016, the Family Court held another permanency hearing. The Family Court found that the Child continued to be dependent. The Mother expressed concern with injuries the Child suffered with her foster family as a result of falls and scuffles with her similarly aged foster sisters. The CASA testified that she believed the Child was receiving excellent care despite the occasional bumps and bruises. The Mother had obtained appropriate housing for the

5

Child, completed parenting classes, remained in treatment with the ACT Program, and continued to receive counseling as a victim of domestic violence.

(12) The Father was contacting and threatening the Mother in violation of the PFA. He was arrested on new charges, including felony stalking in October 2016. The Family Court found that the Father was not complying with his case plan. The Family Court scheduled another post-permanency hearing for February 6, 2017 and a termination of parental rights hearing for March 24, 2017.

(13) At the February 6, 2017 post-permanency hearing, the Family Court found that the Child continued to be dependent. The Family Court also found that the Mother was compliant with her case plan. DFS planned to increase the Mother's visitation with the Child to overnight visits at her home. If the Mother continued to make progress on her case plan, DFS would stay or withdraw the petition to terminate her parental rights. The Family Court found the Father was not compliant with his case plan.

(14) Due to the Department of Correction's failure to transport the Father to the termination of parental rights hearing on March 24, 2017, the Family Court rescheduled the hearing for both of the parents for July 14, 2017. On July 13, 2017, the Mother's brother filed a petition for guardianship of the Child. At the July 14, 2017 termination of parental rights hearing, the Family Court denied the Mother's request that the parties accept service of the guardianship petition and proceed with

6

the petition at the hearing. The Family Court noted that Mother's brother could have pursued guardianship much earlier in the process.

(15) During the July 14, 2017 hearing, the Family Court heard testimony from a Wilmington police officer who had been involved in domestic violence investigations involving the Mother; the Mother; a Newark police officer who saw the Mother and the Father walking together in May 2017 while the PFA was still in place; a Horizon House supervisor who had worked with the Mother; a Children's Choice family interventionist; two DFS employees; the Child's foster mother; and the Child's CASA. In the course of the hearing, the Mother and the Father consented to termination of their parental rights. The Family Court found the consents knowingly, intelligently, and voluntarily entered.

(16) In a letter dated July 20, 2017, the Mother exercised her right under 13 *Del. C.* § 1106B to revoke her consent to the termination of her parental rights. The Mother filed a motion for new trial, relief from judgment, or to reopen the record. The Family Court granted the motion in part and denied it in part. The Family Court ordered a hearing for the Mother to defend herself against the termination of her parental rights.

(17) The hearing was held on October 5, 2017. The Family Court heard testimony from a Wilmington police officer and a Delaware State police officer regarding the arrest of a former boyfriend (not the Father) who had assaulted the

Mother in March 2017. The court also heard testimony from the Mother; three Newark police officers who testified+ regarding the Mother's history as a victim of domestic violence by the Father; a Children's Choice family interventionist; and a DFS employee.

(18) On November 6, 2017, the Family Court issued a decision terminating the parental rights of the Mother and the Father. As to the Mother, the Family Court found by clear and convincing evidence that the Mother had failed to plan adequately for the Child's needs under 13 *Del. C.* § 1103(a)(5). Although the Mother had completed some of the elements of her case plan, she had failed to plan adequately for the Child's needs because she obtained housing that was near the Father's family and where the Father was known to spend time, she continued to expose herself to domestic violence by having voluntary contact with the Father, she was inconsistent in her mental health and substance abuse treatment efforts, and she continued to abuse alcohol. The Family Court also found, by clear and convincing evidence, that the Child had been in DFS' care for more than a year, there was a history of a lack of care of the Child and two of the Mother's other children who were in the care of other relatives (their maternal grandfather and step-grandmother were appointed permanent guardians),[3] the Mother's inappropriate housing meant she could not

---

[3] This Court affirmed the Family Court's appointment of the permanent guardians on direct appeal. *Harris v. Harris*, 2015 WL 1000987 (Del. Mar. 4, 2015).

8

promptly assume legal and physical custody of the Child, and failure to terminate the Mother's parental rights would result in continued emotional instability and physical risk to the Child.

(19) The Family Court next found, by clear and convincing evidence, that DFS had made reasonable efforts to reunify the family. As to the Mother's brother, the Family Court found that he did not make a concerted effort to visit the Child and he did not file the petition for guardianship until the Child had been in DFS' care for more than two years. Finally, the Family Court considered the best interest factors under 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of parental rights was in the best interests of the Child.[4] This appeal followed.

(20) On appeal, the Mother's appointed counsel filed an opening brief and a motion to withdraw under Supreme Court Rule 26.1(c). The Mother's counsel asserts that he has reviewed the record and has determined that no arguable claim for appeal exists. By letter, the Mother's counsel informed her of the provisions of Rule 26.1(c) and provided her with a copy of the motion to withdraw and the

---

[4] The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabiting in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722.

accompanying brief. The Mother provided points for the Court to consider on appeal. In her points, the Mother argues that she adequately planned for the Child's needs, she completed all of the elements of her case plan, the Child suffered injuries while with the foster family, and her brother was interested in taking care of the Child. DFS and OCA filed a response to the Rule 26.1(c) brief and moved to affirm the Family Court's judgment.

(21) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[5] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[6] We review legal rulings *de novo*.[7] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[8] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[9]

(22) The statutory procedure for terminating parental rights requires two separate inquires.[10] First, the Family Court must determine whether the evidence

---

[5] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[6] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[7] *Id.*
[8] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[9] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

presented meets one of the statutory grounds for termination.[11] Second, the Family Court must determine whether termination of parental rights is in the best interest of the child.[12] Both of these requirements must be established by clear and convincing evidence.[13]

(23) After careful consideration of the parties' positions and the record on appeal, the Court concludes that the termination of the Mother's parental rights should be affirmed on the basis of the Family Court's thorough and well-reasoned decision dated November 6, 2017. Contrary to the Mother's contentions on appeal, the Family Court's findings that the Mother failed to complete significant portions of her case plan and that termination of her parental rights was in the Child's best interest are well-supported by the record. There is no abuse of discretion in the Family Court's factual findings and no error in the Family Court's application of the law to the facts. We are satisfied that the Mother's counsel made a conscientious effort to examine the record and the law and properly determined that the Mother could not raise a meritorious claim on appeal.

---

[11] 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[12] 13 *Del. C.* § 722(a).
[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family

Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice