IN THE SUPREME COURT OF THE STATE OF DELAWARE

HEYDON ILAN-HARPER,[1]   §
  §
   Respondent Below,   § No. 315, 2018
   Appellant,   §
  § Court Below—Family Court
   v.   § of the State of Delaware
  §
DIVISON OF FAMILY SERVICES,   § File No. 18-02-10TN
  § CPI No. 18-05601
   Petitioner Below,   §
   Appellee.   §

Submitted: April 11, 2019
Decided: May 8, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

## ORDER

After consideration of the appellant's brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1) This is an appeal from the Family Court's order dated May 17, 2018 that terminated the appellant's ("Father") parental rights in his son ("Child"). The Family Court's order also terminated the parental rights of the Child's mother ("Mother"), who is not a party to this appeal. We therefore focus on the facts in the record as they relate to Father's appeal.

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(2) Father's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Father's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Father of the provisions of Rule 26.1(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Father of his right to supplement counsel's presentation. Father did not respond with any points that he wanted to present for the Court's consideration. The appellee, the Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS"), and the counsel who was appointed to represent the interests of the Child have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) The Child was born in January 2017. Mother had three other children, none of whom were in her custody; her parental rights in one child had been involuntarily terminated, and her parental rights in another child, who had been seriously abused, had been voluntarily terminated. While the Child was still in the hospital, DFS received a call reporting that the Child suffered from withdrawal because of prenatal exposure to methadone and that Mother had fallen asleep multiple times with the Child in her arms, even after hospital staff warned her that such conduct was dangerous to the Child. The Family Court granted *ex parte* custody of the Child to DFS on January 27, 2017.

(4)     At the preliminary protective hearing on February 1, 2017, the Family Court appointed counsel to represent Mother.  That morning, Mother identified Father as the putative father of the Child.  Father did not dispute being the Child's father and agreed to submit to genetic testing; the court ordered that Father also would be appointed counsel.  The court found there was probable cause to believe the Child was dependent.  The court also found that DFS had exercised reasonable efforts to prevent the Child's removal from the home.

(5)     At an adjudicatory hearing on March 16, 2017, Father was adjudicated to be the father of the Child as a result of paternity testing.  The Family Court found that the Child was dependent based on Mother's recent drug use and her DFS history and because Father had pending criminal charges and resided with Mother.  The Family Court found that DFS had exercised due diligence in trying to find a relative placement for the Child.

(6)     On March 31, 2017, the Family Court held a dispositional hearing.  DFS filed a motion seeking to be excused from case planning with Mother because of her history with DFS, including the involuntary termination of her parental rights in one of her older children, and her substance abuse history.  The court deferred ruling on the motion in order to allow Mother to submit a formal response.  DFS submitted a proposed case plan for Father, which included such elements as maintaining stable

employment and suitable housing, ruling out mental health and substance abuse issues, and resolving his criminal charges.

(7) On June 19, 2017, the Family Court held a review hearing. Both parents were participating in supervised visits with the Child once each week, during which they were interacting appropriately with the Child. Father was working with a family interventionist as part of his case plan, had enrolled in a parenting class, and was employed as a construction worker. His criminal charges remained outstanding. The Family Court granted DFS's motion to be excused from case planning with Mother. The permanency goal for the Child remained reunification. The Family Court held another review hearing on September 12, 2017, at which time Father's criminal charges were still pending.

(8) In October 2017, Father pleaded guilty to possession of crack cocaine and was sentenced to probation. In January 2018, while on probation, Father was arrested on additional drug charges and incarcerated. As a result, and because the Child had been in foster care for more than a year, at a permanency hearing on February 2, 2018, the Child's attorney moved to change the permanency goal to termination of parental rights ("TPR") and adoption. DFS supported the goal change. Because Father had made significant progress toward reunification before incurring the new criminal charges, however, the Family Court changed the permanency goal to concurrent goals of reunification and TPR/adoption. The court

4

scheduled a review hearing for April 23, 2018, and ordered that if DFS filed and served a TPR petition at least twenty days in advance, the court would hear the TPR petition at that hearing.

(9) DFS filed a petition for termination of parental rights on February 22, 2018. In March 2018, Father pleaded guilty to one count of Drug Dealing under 16 *Del. C.* § 4754. Mother was personally served with the TPR petition on March 27, 2018, and publication for Mother and Father appeared in the newspaper on March 30, April 6, and April 13, 2018.

(10) Mother and Father appeared with counsel for the TPR hearing on April 23, 2018. At the time, Father was incarcerated and expected to be released no earlier than October 2018. The court heard testimony from Father, Mother, and two social workers who were familiar with the family and the Child's foster family. The court also admitted documentary evidence including the parents' criminal histories, a social report, information from Mother's Facebook account, and information relating to Mother's DFS history. The testimony reflected that Father had made significant progress on his case plan before he became incarcerated after nearly eight grams of heroin were found in his home in January 2018. The evidence further suggested that Father maintained an ongoing relationship with Mother, despite his knowledge of her DFS history and his claim that they were no longer in a relationship. Based primarily on Father's back-to-back drug convictions and his

5

incarceration, the Family Court found by clear and convincing evidence that Father was unable to plan adequately for the Child's physical, mental, and emotional needs.[2]  The Family Court further found by clear and convincing evidence that (i) the Child had entered DFS's care as an infant and had been in care for more than six months;[3] (ii) Father was incapable of discharging his parental responsibilities due to extended or repeated incarceration;[4] (iii) because of Father's incarceration, he was unable to promptly assume legal and physical custody of the Child and to pay for the Child's support;[5] and (iv) failure to terminate Father's relationship with the Child would result in continued emotional instability or physical risk to the Child because Child had been in care for sixteen months, Father was not able to care for the Child because of Father's incarceration, and the Child had been in the care of a foster family that was an adoptive resource for more than a year.[6]  The Family Court next found that DFS had made reasonable efforts to reunify the family.  Finally, the Family Court considered the best interest factors under 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of parental rights was in the Child's best interests.

---

[2] 13 *Del. C.* § 1103(a)(5).
[3] *Id.* § 1103(a)(5)a.1.
[4] *Id.* § 1103(a)(5)a.3.
[5] *Id.* § 1103(a)(5)a.4.
[6] *Id.* § 1103(a)(5)a.5.

(11) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[7] We will not disturb the Family Court's rulings if the court's findings of fact are supported by the record and result from an orderly and logical deductive process.[8] We review legal rulings *de novo*.[9] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[10]

(12) The statutory procedure for terminating parental rights requires two separate inquiries.[11] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[12] Second, the Family Court must determine whether termination of parental rights is in the best interests of the child.[13] Both of these requirements must be established by clear and convincing evidence.[14] After careful consideration of the parties' positions and the record on appeal, we conclude that there is ample evidence supporting the Family Court's termination of Father's parental rights. There was no error or abuse of discretion by the Family Court.

---

[7] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).

[8] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).

[9] *Id.*

[10] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).

[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[12] *Id.* at 537. *See* 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).

[13] *Shepherd*, 752 A.2d at 537. *See* 13 *Del. C.* § 722(a) (listing factors for consideration when determining the best interests of the child).

[14] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice