IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CONNOR ABBOTT,[1] | § | No. 5, 2019 |
| | § | |
| Respondent Below, | § | Court Below—Family Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | File Nos. 18-04-04TN; |
| | § | CN15-04301 |
| DEPARTMENT OF SERVICES | § | |
| FOR CHILDREN, YOUTH, AND | § | Petition Nos. 18-10763; |
| THEIR FAMILIES/DIVISION OF | § | 17-13700 |
| FAMILY SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |
| | § | |
| In the Interest of: | § | |
| Mia Franks | § | |

Submitted: May 16, 2019
Decided: June 13, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **O R D E R**

After consideration of the appellant's brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1) This is an appeal from the Family Court's order dated December 6, 2018 that terminated the appellant's ("Father") parental rights in his daughter

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

("Child"). The Family Court's order also terminated the parental rights of the Child's mother ("Mother"), whose separate appeal is currently pending before this Court, in six children, including the Child. We focus on the facts in the record as they relate to Father's appeal.

(2) Father's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Father's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Father of the provisions of Rule 26.1(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Father of his right to supplement counsel's presentation. Father did not respond with any points that he wanted to present for the Court's consideration. The appellee, the Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS"), and the Child's guardian ad litem have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) The Child was born in February 2014. Mother had four older children and was pregnant with a sixth child when, in May 2017, DFS received an urgent referral that Mother had moved into the home of a man who had been substantiated for sexual abuse against one of the older children four years earlier. The family has a complicated history of involvement with the Family Court extending back to at least 2005, including allegations of sexual abuse of several of the children by various

2

men and lengthy periods where at least some of the children were in the guardianship of various maternal relatives.

(4) Father is registered as a Tier II sex offender because of a prior conviction for Unlawful Sexual Contact Second Degree, which did not involve the Child or any of her siblings. At the time that the children came into DFS's care, Father was living at Oxford House, a transitional sober housing facility. The Family Court granted *ex parte* custody of the children to DFS on May 5, 2017.

(5) At a preliminary protective hearing on May 17, 2017, Mother stipulated as to probable cause for dependency concerning all the children. Father was not present for that hearing. Before the hearing, he had expressed interest in being considered as a placement option for the Child, but the Family Court noted that his status as a registered sex offender would require him to rebut the statutory presumption against his having custody.[2] The court found there was probable cause to believe the Child was dependent. The court also found that DFS had exercised reasonable efforts to prevent the Child's removal from the home and to place the Child with relatives.

(6) Father appeared at an adjudicatory hearing on June 19, 2017. The Family Court appointed counsel to represent him for purposes of that hearing and ordered that different counsel would be appointed to represent him going forward;

---

[2] 13 *Del. C.* § 724A.

3

the court also ordered paternity testing to determine whether Father was the Child's father. Father stipulated to a finding of dependency due to his inability to provide housing for the Child. The Family Court again noted the presumption against his having custody. Mother stipulated to a finding of dependency because she had been charged with ten counts of Endangering the Welfare of a Child and a no-contact order was in place. The Family Court found that DFS had made reasonable efforts to prevent the removal of the Child from the home and to find an appropriate relative placement for the Child.

(7) On July 18, 2017, the Family Court held a dispositional hearing. The DFS treatment worker testified regarding the elements of Father's case plan, which included a drug and alcohol evaluation, providing clean urine screens for six months, obtaining appropriate and stable housing, obtaining employment, taking a parenting class, and engaging in therapy individually and with the Child if necessary. Father continued to live in Oxford House for substance abuse treatment and needed to resolve outstanding legal issues. Because DFS had information suggesting that an existing court order prohibited Father from being around children, he also was required to provide verification that he was permitted to be around children. DFS was exploring options for placement of the Child with certain relatives of Father, including the Child's paternal grandmother and Father's brother ("Paternal Uncle").

Mother's case plan was also reviewed at the hearing, and the permanency plan remained reunification.

(8) On October 12, 2017, the Family Court held a review hearing. Father was working full time, although he later lost his employment in December 2017. The no-contact order had been modified to allow supervised visits, but Father and the Child had not yet had any visits. He was attending sex offender therapy as a condition of probation. He was still living at Oxford House, and Oxford House reportedly had no concerns about his progress in substance abuse treatment. Paternal Uncle had filed a petition for guardianship of the Child. DFS had completed a satisfactory home visit and determined that Paternal Uncle and his wife appeared appropriate as a placement option, but a few days before the hearing DFS had learned that Paternal Uncle had been investigated as a perpetrator of sexual abuse of a four-year-old child in three different cases in 2006. Paternal Uncle had not disclosed those cases to DFS, claiming that he had forgotten. The Paternal Uncle's guardianship petition was later dismissed in November 2017.

(9) The Family Court held another review hearing on January 5, 2018. Father's counsel was present, but Father did not appear at that hearing because of snowy conditions.

(10) On March 20, 2018, DFS filed a motion to change the permanency goal from reunification to termination of parental rights ("TPR") and adoption. At a

review hearing on March 27, 2018, the DFS treatment worker testified regarding Father's progress on his case plan. Father had held full-time employment for two months and was saving money for his own housing, but was living between friends' and family members' homes. He had completed parenting classes and was involved in weekly therapy. Father and the Child had not had visits, but Father had been in contact with the Child's therapist. The court adjudicated Father to be the Child's father, based on the results of genetic testing. On April 4, 2018, the court granted DFS's motion to change the permanency goal to TPR and adoption.

(11) On April 2, 2018, DFS filed a petition to terminate Mother's and Father's parental rights as to the Child. Trial on the TPR petition, and on separate petitions to terminate parental rights as to the other children, was held on September 14 and 24, 2018, October 24, 2018, and November 9, 2018. Although Father attended three of the four trial dates, and his counsel participated in all of the hearings, Father did not present any evidence to overcome the presumption against his having custody, nor did he present any evidence that he had suitable housing for the Child. He elected not to testify during the proceedings. The Child's therapist testified that Father had contacted her about setting up counseling sessions with Father and the Child, but the therapist declined to schedule them because DFS had not established visitation between Father and the Child. Mother testified that before the Child entered foster care, Father had visited and had brought clothing and toys

6

for the Child, but Father and the Child had never lived together. When confronted with the allegations that the man Mother and the children were living with before the children entered care had sexually abused the Child, Mother insisted the allegations were false. When asked about the two Child Advocacy Center interviews of the Child—during which the Child said that the man had "kissed her 'pee pee,'" "tried to 'make me have a baby in my stomach,'" and "touched her on her butt with a 'nail' when she was sleeping in her pajamas in her bed"—Mother described the interviews as "hilarious." During closing arguments, Father's counsel acknowledged that Father could not have custody of or unsupervised visits with the Child because of his status as a sex offender. Father therefore supported guardianship with the Child's maternal grandmother, who had filed a petition for guardianship of all six children.

(12) The Family Court found by clear and convincing evidence that Father was unable to plan adequately for the Child's physical needs or her mental and emotional health and development.[3] The Family Court further found by clear and convincing evidence that (i) the Child had been in DFS's care for more than a year;[4] (ii) Father had not completed a case plan and was incapable of promptly assuming legal and physical custody of the Child and to pay for her support[5]; (iii) Father had

---

[3] 13 *Del. C.* § 1103(a)(5).
[4] *Id.* § 1103(a)(5)a.1.
[5] *Id.* § 1103(a)(5)a.4.

made no showing of an ability to care for the Child;[6] and (iv) changing the Child's physical custody and placing her in the care of Father, whom she had not seen in a year, would be emotionally and physically detrimental because there was no evidence of a bond between the Child and Father.[7] The court emphasized that since the time that the Child entered foster care, Father had lived at the substance abuse recovery center and at a men's shelter and had not proved that he could provide stable housing for the Child. The court also noted that Father had been convicted of Unlawful Sexual Contact in the Second Degree[8] and had not rebutted the presumption against his having custody of the Child or unsupervised visits set forth in 13 *Del. C.* § 724A.

(13) The Family Court next found by clear and convincing evidence that DFS had made reasonable efforts to reunify the family. Finally, the Family Court considered the best interest factors under 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of parental rights was in the Child's best interests.

(14) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[9] We will not disturb the

---

[6] *Id.* § 1103(a)(5)a.5.C.
[7] *Id.* § 1103(a)(5)a.5.D.
[8] *See* 11 *Del. C.* § 768 ("A person is guilty of unlawful sexual contact in the second degree when the person intentionally has sexual contact with another person who is less than 18 years of age or causes the victim to have sexual contact with the person or a third person.").
[9] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).

Family Court's rulings if the court's findings of fact are supported by the record and result from an orderly and logical deductive process.[10] We review legal rulings *de novo*.[11] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[12]

(15) The statutory procedure for terminating parental rights requires two separate inquiries.[13] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[14] Second, the Family Court must determine whether termination of parental rights is in the best interests of the child.[15] Both of these requirements must be established by clear and convincing evidence.[16]

(16) After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of, and for the reasons stated in, the Family Court's thorough and well-reasoned decision dated December 6, 2018. We find no error in the Family Court's application of the law to the facts. The Family Court found clear and convincing evidence that Father had failed to plan adequately for the Child's needs, that DFS

---

[10] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[11] *Id.*
[12] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[13] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[14] *Id.* at 537. *See* 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[15] *Shepherd*, 752 A.2d at 537. *See* 13 *Del. C.* § 722(a) (listing factors for consideration when determining the best interests of the child).
[16] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

9

had made reasonable reunification efforts, and that termination of Father's parental rights was in the best interests of the Child. Those conclusions are well-supported by the record. Thus, we affirm.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice