Justine LONG,[1] Respondent
Below, Appellant,

v.

**DIVISION OF FAMILY SERVICES**
and Office of the Child Advocate,
Petitioners Below, Appellees.

No. 546, 2011.

Supreme Court of Delaware.

Submitted: March 28, 2012.
Decided: April 3, 2012.

---

1. The Court *sua sponte* assigned a pseudonym to the appellant by Order dated October 13, 2011 pursuant to Supreme Court Rule 7(d).

Mark H. Hudson, Esquire, Haller & Hudson, Georgetown, Delaware, for appellant.

John A. Eberly, Esquire, Department of Justice, Georgetown, Delaware, for appellee.

Jennifer S. Donahue, Esquire, Office of the Child Advocate, Georgetown, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

The respondent-appellant, Justine Long (the "Mother"), appeals from a final judgment of the Family Court that terminated her parental rights in her now three-year-old son (the "Child"). The Mother raises two arguments on appeal. First, she contends that the Family Court erred, by shifting the burden of proof from the Division of Family Services ("DFS") to her, at the termination of parental rights hearing. Second, the Mother contends the Family Court's factual determination that the Mother failed to plan for the Child was clearly erroneous and not sufficiently supported by the record.

We have concluded that both of the Mother's arguments are without merit. Therefore, the judgment of the Family Court is affirmed.

### Facts and Procedural History

In September 2009, the Family Court entered an *ex parte* order awarding temporary care and custody of the Child to DFS. The Family Court "found probable cause that sufficient emergency conditions existed to believe that the child continues to be in actual physical, mental or emotional danger, or there is a substantial imminent risk thereof, due to [M]other's failure to protect the child and [F]ather's pending criminal charges with [M]other and [C]hild as victims."

At the scheduled preliminary protective hearing, the Mother waived her right to a hearing based on her lack of housing and domestic violence. The Father waived his right to a hearing based on criminal charges against him for Assault in the Third Degree, with the Child as victim, Offensive Touching, and Unlawful Imprisonment, with the Mother as victim. The Father had a no-contact order in place against him with respect to the Mother and the Child. The Family Court ordered that custody of the Child continue with DFS, who had placed the Child in the care of Jamie Hammond, the Child's godmother. At the time, the Child was six months old.

At a dispositional hearing on October 27, 2009, the Family Court approved a case plan for the Mother which required that

she: follow supervised visitation for four hours a week; obtain employment or other income to provide for the family's basic needs; provide a living environment for the Child free of domestic violence and engage in a parenting class; undergo a substance abuse evaluation and follow any treatment recommendations; undergo a mental health evaluation and follow any treatment recommendations; obtain secure and safe housing, and inform DFS of anyone moving into her home to allow for a background check. The Father failed to appear at the hearing.

On November 24, 2009, the Family Court held a hearing to review the dispositional hearing order. The Father again failed to appear. The Mother testified that she was living with the Father, and had been for two weeks. She testified that her living arrangement was temporary, and that she did not want the Child living with her there because the housing was not up to standard. She said that she left the Safe House where she had been residing because she had no transportation. The Safe House had provided the Mother with a car, but then took it away after she was accused of transporting others. She testified that she understood the Father needed to leave her home for her to regain custody of her son. The Mother had secured employment.

The Family Court held another hearing on February 23, 2010. Neither the Father nor the Mother appeared. Dr. Joseph Zingaro, who had performed a psychological evaluation of the Mother, testified and explained a report he had prepared. He testified that he based his report on the Family Court's October order, and had not received the Family Court's November order from the Mother. He felt that the Mother sought to deceive him by purposively withholding that information. A DFS worker testified that Hammond told her the Mother had not visited with the Child in almost two months. She also testified that the Mother had quit her employment one week after the November hearing.

On June 1, 2010, the Family Court held proceedings to review the Child's placement and the case plans of the parents. Only the Mother appeared at the hearing. A DFS worker testified that the Mother had visited the Child only two times since the February 23 hearing. The Mother testified that she had moved to Ocean City, where she had resided with the Father. She then left the Father and moved in with her mother, who had custody of the Mother's other child. The Mother had not begun her parenting or domestic violence counseling, but stated that she intended to pursue both.

At the next hearing on August 24, 2010, DFS requested that the Family Court change the permanency goal to termination of parental rights. A staff member from Brandywine Counsel and Community Services testified that the Mother had failed to follow through with her treatment recommendations, and that the center had lost contact with her. The DFS worker testified that the Mother had two visits with the Child in the last two months. The Mother testified that she was pregnant with the Father's child. She testified that she needed to miss her visitations and counseling appointments because of her employment. The Family Court entered an order that the permanency goal be changed from reunification to termination of parental rights. DFS then filed this action for termination of parental rights.

On March 29, 2011, the Family Court held the first day of trial on the termination of parental rights. Hammond testified that the Child regarded her as his mother. A DFS worker testified that the Mother and the Child had "really no bond

at all," and that the Mother recognized that the Child viewed Hammond as his mother. Another DFS worker testified that DFS had ongoing concerns about the Mother, including the history of domestic violence with the Father, the presence of the Mother's other child during domestic violence incidents, and the Mother's failure to complete her case plan in a reasonable time frame.

At the second day of trial on May 10, 2011, the Mother testified that she was employed, had received domestic violence treatment, and had not been in contact with the Father for almost one year. She also testified that her monthly visits with the Child had been going well, and that she wanted the Child to develop a relationship with her other children. The Mother's mother also testified. She stated that the Child should be returned to the Mother's custody at some point, but that the Mother first needed to reestablish a bond with the Child. She also testified that this was the longest period of time that the Mother and the Father had been out of contact.

The Family Court took the matter under advisement and subsequently issued its written decision. The Family Court found that DFS had established, by clear and convincing evidence, that the Mother failed to plan adequately for the Child for over one year; that DFS had used reasonable efforts to reunite the Child with the Mother; and that it was in the Child's best interests to terminate the Mother's parental rights. Therefore, the Family Court terminated the Mother's parental rights in the Child. This appeal followed.

### Standard of Review

When reviewing a Family Court's order, our standard and scope of review involves a review of the facts and law, as well as the inferences and deductions that the Family Court has made.[2] To the extent that the issues on appeal implicate rulings of law, we conduct a *de novo* review.[3] To the extent that the issues on appeal implicate rulings of fact, we review the factual findings of the Family Court to assure that they are sufficiently supported by the record and are not clearly erroneous.[4] We will not disturb inferences and deductions that are supported by the record and that are the product of an orderly and logical deductive process.[5] If the Family Court has correctly applied the law, our review is limited to abuse of discretion.[6]

### Burden of Proof Proper

The statutory standard for terminating parental rights provides for two separate inquiries.[7] In the first inquiry, the Family Court must find a statutory ground for termination under title 13, section 1103 of the Delaware Code.[8] In the

2. *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 730 (Del. 2008); *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983).

3. *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d at 730–31; *In re Heller*, 669 A.2d 25, 29 (Del.1995).

4. *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d at 731; *In re Stevens*, 652 A.2d 18, 23 (Del.1995).

5. *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d at 731; *Solis v. Tea*, 468 A.2d at 1279.

6. *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d at 731; *Solis v. Tea*, 468 A.2d at 1279.

7. *Green v. Div. of Family Servs.*, 2010 WL 1114928, at *3 (Del.2010) (quoting *Shepherd v. Clemens*, 752 A.2d 533, 536–37 (Del.2000)).

8. *Id.* (quoting *Shepherd v. Clemens*, 752 A.2d at 537).

second inquiry, the Family Court must determine whether termination is in the best interests of the child.[9] DFS must satisfy both inquiries by clear and convincing evidence.[10] Before filing the petition to terminate parental rights, DFS must also prove by clear and convincing evidence that it made *bona fide* reasonable efforts to reunite parent and child.[11]

■ The Mother contends that the Family Court erred by shifting the burden of proof at the termination of parental rights hearing from DFS to the Mother. The Mother points to an excerpt from the hearing transcript where the Family Court stated:

> [F]or purposes of this case I believe once this Court orders that services not be provided, then the clock and obligation of the Division ends as to whether or not it has to continue to try to show the mother or the father is working up to the case plan.

Unfortunately, the Mother's burden shifting argument cites to that isolated excerpt out of context. A review of the complete hearing transcript demonstrates that the Family Court did not shift the burden to DFS. The Family Court first discussed the goals set forth in the case plan. The Family Court then stated:

> I'm satisfied that at this point the Division has established a ground for termination and that mother has not successfully completed the case plan. Now there's been talk about where is the cutoff as to what the State has to prove. . . . Again, obviously the parents are entitled to provide whatever evidence they want

to show circumstances have since changed from the time the Court ordered a change of goal to where we are now and there's obviously been cases where that has been done. But we have to depend on what the evidence is as shown. *That does not shift the burden from the Division to the parents to show that there has been a termination.* Otherwise, in the *Burns* case, the Supreme Court would not have said that the Division no longer has to provide services and that the clock would stop. So I think that's when . . . the Division's case is either made or lost as far as it's concerned. Obviously parents can provide more evidence.

Thus, a reading of the complete record reflects the Family Court was stating that DFS had satisfied its duties with respect to reunification efforts—not that the burden of proof had shifted from DFS to the Mother. In *Burns*, we held that if termination of parental rights is sought based on the parent's failure to plan, "the trial court is required to make appropriate findings of fact and conclusions of law as to the State's *bona fide* efforts to meet its own obligations."[12] We also explained: "[w]e see no fundamental error in permitting the agency to discontinue reunification efforts if the State has acted properly to terminate parental rights. In such circumstances the State assumes an adversarial role vis a vis the parents. To require continued reunification efforts, while contending for termination, is illogical."[13] The Family Court's statements at oral ar-

---

9. *Id.;* Del.Code Ann. tit. 13, § 722(a) (2009).

10. *In re Stevens,* 652 A.2d at 23.

11. *Rhineway v. Dept. of Services for Children, Youth, and Their Families,* 2005 WL 2179240, at *2 (Del. Sept. 8, 2005) (citing *In re Hanks,* 553 A.2d 1171, 1179 (Del.1989); *In re Burns,* 519 A.2d 638, 649 (Del.1986)).

12. *Matter of Burns,* 519 A.2d 638, 649 (Del. 1986).

13. *Id.*

gument were entirely consistent with this Court's holding in *Burns*.

Moreover, the Family Court's final opinion demonstrates that it was holding DFS to the standard of proving failure to plan by clear and convincing evidence. The Family Court stated that: "[i]n addition to establishing a ground for the termination of parental rights, the Division must also establish that it has used reasonable efforts to reunite a parent with a child." It then held: "[a]fter considering all of the evidence in this case, I am satisfied the Division has by clear and convincing evidence established that mother has failed to adequately plan for [Child] for over a period of one year...." The record reflects that the Family Court properly placed the burden of proof on DFS throughout the termination proceedings.

### *Failure to Plan*

■ The Mother also contends that the Family Court's determination that the Mother had failed to plan for the Child was clearly erroneous and not sufficiently supported by the record. Failure to plan is a statutory ground for termination under section 1103. Section 1103(a)(5) provides that this ground exists where the parent(s) "are not able, or have failed, to plan adequately for the child's physical needs or mental and emotional health and development" and one or more additional conditions is met, including that "[t]he child has been in the care of the Department or licensed agency for a period of 1 year, or for a period of 6 months in the case of a child who comes into care as an infant...."[14]

The Family Court concluded that the Mother had failed to plan based on the uncompleted portions of her case plan and, most significantly, her failure to create a parent/child bond with the Child. Specifi-

cally, the Family Court explained that the Mother's visits with the Child were "sporadic," the Child had bonded with Hammond, and the Child viewed Hammond—and only Hammond—as his mother. The Family Court also emphasized the importance of the failure to bond given the Child's young age and the two years over which the Family Court had attempted reunification. These findings were supported by the hearing testimony from DFS workers, Hammond, the Mother, and the two-year proceedings. The Mother has not shown that the Family Court's "failure to plan" determination was clearly erroneous.

### *Conclusion*

The judgment of the Family Court is affirmed.

---

14. Del.Code Ann. tit. 13, § 1103(a)(5) (2009).