IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JANICE PRICE,[1] | § | |
| | § | No. 391, 2017 |
|     Respondent Below- | § | |
|     Appellant, | § | |
| | § | |
|     v. | § | Court Below—Family Court |
| | § | of the State of Delaware |
| DEPARTMENT OF SERVICES FOR | § | |
| CHILDREN, YOUTH AND THEIR | § | File No. CK15-01455; 17-06-2TK |
| FAMILIES, | § | Pet. Nos. 15-07734; 17-16781 |
| | § | |
|     Petitioner Below- | § | |
|     Appellee. | § | |

Submitted: January 9, 2018
Decided: March 2, 2018

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

**<u>ORDER</u>**

This 2nd day of March 2018, upon consideration of the appellant's brief filed pursuant to Supreme Court Rule 26.1(c), her attorney's motion to withdraw, and the appellee's response and motion to affirm, it appears to the Court that:

(1)    The respondent-appellant, Janice Price ("Price"), filed this appeal from the Family Court's order, dated August 28, 2017, terminating her parental rights in her son, Kevin (born February 11, 2015).[2]

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d). By separate Order, the Court also assigned a pseudonym to the child.

[2] The Family Court's Order also terminated the parental rights of Kevin's father, who is not a party to this appeal.

(2) Mother's appointed counsel on appeal has filed an opening brief and a motion to withdraw under Supreme Court Rule 26.1(c). Counsel asserts that she has reviewed the record and has determined that no arguable claim for appeal exists. By letter, Mother's counsel informed her of the provisions of Rule 26.1(c) and provided her with a copy of the motion to withdraw and the accompanying brief. Mother responded by letter with points for the Court to consider on appeal. The appellee, the Department of Services for Children, Youth and their Families for the State of Delaware ("the State"), has filed a response to counsel's Rule 26.1 brief and has moved to affirm the Family Court's judgment. The guardian ad litem appointed to represent the interests of the child joined in the State's response.

(3) On March 20, 2015, the Family Court entered an emergency *ex parte* Order awarding custody of Kevin to the State, after Mother entered a mental health facility. Mother's grandmother told State workers that she could not care for the infant, and there were no other family members willing or able to care for him. The Family Court held a preliminary protective hearing on March 25, 2015, at which neither parent appeared. The Family Court held an adjudicatory hearing on April 28, 2015, at which neither parent appeared.

(4) On May 27, 2015, the Family Court held a dispositional hearing. Mother appeared at the hearing with appointed counsel and signed a case plan with the State. Following a review hearing held on August 19, 2015, the Family Court

2

instructed the State to seek a transfer of Kevin's case to Pennsylvania, where Mother was involved in dependency proceedings involving her older children. In April 2016, the State filed a motion requesting to change the goal of Mother's case plan from reunification to termination. After several continuances, the Family Court held a hearing in April 2017. The Family Court granted the State's motion to change the goal to termination.

(5) The Family Court held a termination hearing on August 28, 2017. Mother appeared at the hearing by telephone. Mother disconnected the phone call shortly after the hearing began, asserting that the proceedings were unlawful.[3] The Family Court moved forward with the hearing and heard testimony from a former State treatment worker assigned to Kevin's case, an employee with Children and Families First, a permanency worker, and Kevin's foster mother.

(6) The testimony at the hearing established that the State had developed a plan for reunification of Kevin with Mother in May 2015. Despite early attempts at compliance with the plan and visitation with Kevin, Mother had not had any meaningful contact with Kevin since May 2016. By the time of the August 2017 hearing, Mother had been convicted of criminal charges in Pennsylvania and was incarcerated pending sentencing on those charges. The evidence also established that Mother's parental rights in Kevin's three older siblings had been terminated by

---

[3] Father failed to appear at the hearing.

3

a Pennsylvania court. Mother had failed to complete most of the requirements of her reunification plan.

(7) The testimony also established that Kevin had been living with the same foster family since entering the State's custody in March 2015. Kevin is thriving and happy. His foster mother testified that she would like to adopt Kevin.

(8) The Family Court found clear and convincing evidence that Mother had failed to plan adequately for Kevin's needs,[4] that Mother had abandoned Kevin,[5] and that Mother had her parental rights over another child involuntarily terminated in another proceeding.[6] The Family Court also found clear and convincing evidence that the State had made reasonable efforts to reunify Mother with Kevin[7] and that it was in Kevin's best interest that Mother's parental rights be terminated.[8] This appeal followed.

(9) In response to her counsel's Rule 26.1 brief on appeal, Mother contends that she is eligible for early release from her Pennsylvania sentence and that she has guaranteed housing and employment upon her release. She also contends that she wants to be reunified with Kevin and that she is prepared to care for Kevin if he is returned to her. She asserts that she has completed updated

---

[4] 13 *Del. C.* § 1103(a)(5)a.

[5] *Id.* § 1103(a)(2).

[6] *Id.* § 1103(a)(6).

[7] *See Powell v. Dep't Servs. Children, Youth & their Families*, 963 A.2d 724, 737-38 (Del. 2008).

[8] 13 *Del. C.* § 722(a).

4

courses in anger management, domestic violence, and parenting as part of her early release plan. She also contends that she has been diagnosed with schizophrenia and is receiving treatment. She argues that there is no evidence of long-term drug use and that she has no convictions for assault or domestic violence. She contends that the State did not provide services to her or do enough to attempt to reunify her with Kevin.

(10) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[9] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[10] We review legal rulings *de novo*.[11] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[12] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[13]

(11) After careful consideration of the parties' positions and the record on appeal, we find no error in the Family Court's application of the law to the facts and conclude that the Family Court's factual findings are well-supported by the

---

[9] *Long v. Div. of Fam. Servs.*, 41 A.3d 367, 370 (Del. 2012).

[10] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).

[11] *Id.*

[12] *CASA v. Dept. of Servs.*, 834 A.2d 63, 66 (Del. 2003).

[13] *Wife (J. F. V.), v. Husband (O. W. V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

record. It is laudable that Mother is making efforts to improve herself and her situation while she is incarcerated. But, the Family Court considered all of the evidence presented to it at the hearing. Mother refused to participate in that process. The Family Court found clear and convincing evidence that termination of Mother's parental rights was in Kevin's best interest. That conclusion is well-supported by the record. Thus, we affirm.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:


*/s/ Collins J. Seitz, Jr.*
Justice

6