IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| TAYLOR PEETA,[1] | § |
| | § No. 159, 2018 |
| Respondent Below, | § |
| Appellant, | § Court Below—Family Court |
| | § of the State of Delaware |
| v. | § |
| | § File No. CK17-01060 |
| JENNY BLANK, | § |
| | § Petition Nos. 17-01323 |
| Petitioner Below, | § 17-08941 |
| Appellee. | § |

Submitted: January 11, 2019
Decided: March 15, 2019

Before **STRINE,** Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

Upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The respondent below-appellant, Taylor Peeta ("the Mother"), filed an appeal from the Family Court's order, dated February 8, 2018, granting the petition for permanent guardianship filed by the petitioner below-appellee, Jenny Blank ("the Paternal Grandmother"). Having carefully reviewed the record, we find no error or abuse of the discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the appellants under Supreme Court Rule 7(d).

(2)     The Mother and the Paternal Grandmother's son ("the Father") were the parents of a son born in 2005 ("the Child").  The Child lived with the Father.  After the Father died in late 2016, the Child moved to live with his paternal grandparents.  Paternal Grandmother filed, along with her daughter, a petition for permanent guardianship of the Child.  The Family Court ordered A Better Chance for Our Children to prepare a social study under 13 *Del. C.* § 2354.

(3)     The Mother opposed permanent guardianship, but did not oppose a temporary guardianship while she was incarcerated.  Counsel was appointed to represent the Mother.  The Mother filed a *pro se* motion to dismiss the petition for permanent guardianship, petition for custody, motion for ineffective assistance of counsel, and a petition to change venue.  The Family Court denied all of these motions.

(4)     The Family Court held a hearing on the petition for permanent guardianship on January 11, 2018.  The aunt was removed from the petition for permanent guardianship.  The aunt, the Paternal Grandmother, a counselor from the Child's school, an employee of A Better Chance for Our Children, and the Mother testified at the hearing.  The Family Court also interviewed the Child separately.

(5)     The aunt and the Paternal Grandmother testified that the Father had raised the Child as a single parent.  They helped the Father, who moved to live near the Paternal Grandmother three years before his death, care for the Child.  After the

2

Father died, the Child moved in with his grandparents. The aunt and Paternal Grandmother testified that before the Father died the Mother had little involvement in the Child's life and had not paid any child support. The Child spent time with the Mother's other children (who did not live with her) and continued to do so after the Father's death.

(6) The school counselor testified that the Child was a special needs student who had made good progress since coming to the school. The school did not know the Mother was alive until recently because the Child had told everyone that she was dead. The employee from A Better Chance for Our Children testified about her investigation, which included interviews of the Child and paternal grandparents, a telephone call with the Mother (who was supposed to call again but did not do so) criminal background checks, and reference checks. The employee recommended granting of the petition for permanent guardianship because the Mother was incarcerated and unlikely to assume care of the Child in the near future, the Child expressed a strong desire to stay with his grandparents, and his grandparents could provide him with a good home.

(7) The Mother testified that she began serving a seven-year sentence for distribution of cocaine in March 2016. Based on her completion of various programs and receipt of good time and Maryland parole rules, she expected to receive probation or parole as early as April 2018. The Mother opposed permanent

guardianship because she would be released from jail soon and she and the Father had shared custody of the Child, with the Child seeing the Mother every weekend, until she was incarcerated. She also testified that she spoke with the Child on the telephone three or four times a week while the Father was alive, but that the Paternal Grandmother was not letting her speak with the Child on the telephone. She said she was never asked to provide child support, but she took care of the Child when he was with her.

(8) In his interview with the Family Court judge, the Child said he would see the Mother once every six months or so while he lived with the Father. The Father told him he could see the Mother every month, but he did not want to. When he lived with the Father, he did not speak to the Mother on the telephone because she never called. The Child said he wanted to live with his grandparents and if something happened to them, then he wanted to live with his aunt.

(9) In an order dated February 8, 2018, the Family Court granted the petition for permanent guardianship. Applying 13 *Del. C.* § 2353,[2] the Family Court found by clear and convincing evidence that the one of the grounds for termination

---

[2] This section provides that the Family Court shall grant permanent guardianship if it finds by clear and convincing evidence that: (i) one of the statutory grounds for termination of parental rights has been met; (ii) adoption is not possible or appropriate; (iii) permanent guardianship is in the best interests of the child; and (iv) the proposed permanent guardian is emotionally, mentally, physically and financially suitable, has cared for the child for at least six months or is a relative, has committed to remain the permanent guardian, and has demonstrated an understanding of the financial implications of becoming a permanent guardian.

of parental rights under 13 *Del. C.* § 1103(a) had been met. The Mother had failed to plan adequately for the Child's physical, mental, emotional health and development, the Child had resided in the home of a relative for at least a year, the Mother was incapable of discharging her parental responsibilities, and there was little likelihood that the Mother would be able to discharge those responsibilities in the future. The Family Court also found that adoption was not appropriate, the best interest factors under 13 *Del. C.* § 722 weighed in favor of permanent guardianship, and the Paternal Grandmother satisfied the criteria for a permanent guardianship.

(10) This appeal followed. On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[3] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[4] We review legal rulings *de novo*.[5] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[6] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[7]

---

[3] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[4] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[5] *Id.*
[6] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[7] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

(11)   The Mother's arguments on appeal may be summarized as follows: (i) there were factual mistakes in the Family Court order; (ii) the paternal relatives brainwashed the Child, manipulated the school counselor, prevented her from contacting the Child by telephone or mail, and ignored her wishes for the Child to receive counseling outside of the school; (iii) the aunt was not a credible witness; (iv) the status of her nine other children was irrelevant because five of them were the age of majority and four of them lived with other relatives because she was incarcerated; (v) she and the Father shared childcare responsibilities before the Father died; and (vi) her counsel was ineffective.

(12)   After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of, and for the reasons stated, in the Family Court's thorough and well-reasoned order dated February 8, 2018.  The factual mistakes identified by the Mother (the Child's birth date, which was correctly listed in the caption, the date of the permanent guardianship petition, and the Child's age upon the completion of the Mother's prison sentence) were not material to the Family Court's decision.  As to the Mother's attacks on the other witnesses and her contention that she shared joint responsibility for the Child before the Father died, we will not substitute our opinion for that of the Family Court when the determination of facts turns on a question of credibility and the acceptance or rejection of the testimony of witnesses before the

6

Family Court.[8]  It was within the Family Court's discretion to determine that the Child and paternal relatives were more credible than the Mother.  To the extent the Mother claims that her counsel's ineffectiveness led to the granting of the petition for permanent guardianship, the record does not support that claim.  The February 8, 2018 order reflects that the Family Court carefully reviewed the evidence, made factual findings, and applied the correct legal standard in deciding to grant the Paternal Grandmother's petition for permanent guardianship.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ Leo E. Strine, Jr.

Chief Justice

---

[8] *See supra* n.7.