# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMY DUNCAN,[1] | § | No. 610, 2018 |
| Respondent Below, Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| PAMELA SMITH, | § | File No. CK17-03850 |
| Petitioner Below, Appellee, | § | Petition No. 17-33357 |
| | § | |
| CINDY DUNCAN, | § | |
| FREDRICK DUNCAN, JR., | § | |
| FREDRICK DUNCAN, SR., | § | |
| Respondents Below, Appellees, | § | |

_____

| | | |
|---|---|---|
| AMY DUNCAN, | § | No. 610, 2018 |
| Respondent Below, Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| CINDY DUNCAN, | § | File No. CK14-02301 |
| FREDRICK DUNCAN, SR., | § | Petition No. 17-30023 |
| Petitioners Below, Appellees, | § | |
| | § | |
| FREDRICK DUNCAN, JR., | § | |
| Respondent Below, Appellee. | § | |

Submitted: May 31, 2019
Decided: July 30, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

_____

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

**ORDER**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)　The appellant, Amy Duncan ("Mother"), and the appellee Fredrick Duncan, Jr. ("Father") have three children—Grant, Iris, and Heather. Grant is now four years old, Iris is eight, and Heather is twelve. Mother filed this appeal from a Family Court order that, among other things, granted guardianship of Grant to the appellees Fredrick Duncan, Sr. ("Paternal Grandfather") and Cindy Duncan ("Paternal Grandmother" and, together with Paternal Grandfather, the "Paternal Grandparents"). The order also denied the petition of the appellee Pamela Smith ("Maternal Grandmother") for guardianship of the children. Mother appeals the order solely to the extent it awarded guardianship of Grant to the Paternal Grandparents, arguing that the Family Court's factual findings do not support its conclusion that Grant is dependent. For the reasons discussed below, we reverse.

(2)　On August 25, 2014, before Grant was born, the Paternal Grandparents filed a petition for guardianship of Heather and Iris, and a Commissioner of the Family Court granted the accompanying motion for emergency guardianship. Mother and Father, who it appears may have been undergoing inpatient treatment in Florida at the time, failed to appear at a mediation conference on October 23, 2014, and a Commissioner entered a default order granting guardianship of Heather and

2

Iris to the Paternal Grandparents, with visitation to occur as mutually agreed by the parties.

(3)  After Mother and Father returned from Florida, Heather and Iris began living with them again, although the Paternal Grandparents continued to have guardianship.  In April 2017, Mother and Father filed a petition to rescind guardianship of Heather and Iris.  The Family Court denied the parents' petition for rescission on October 23, 2017.  The court found that the Paternal Grandparents paid the parents' living expenses; Mother and Father did not have fulltime employment; and Mother and Father had not demonstrated that they were financially able to support and care for Heather and Iris.  The court was also concerned that the parents continued to suffer from substance abuse issues.

(4)  On September 25, 2017 the Paternal Grandparents filed a petition for guardianship of Grant.  They alleged that Mother and Father were in drug rehabilitation and had no means of supporting Grant.  They also alleged, without any factual specificity, "possible neglect" of Grant.  In her answer to the petition, Mother indicated that she could provide clean drug screens and had provided clean screens to the Paternal Grandparents; that the Paternal Grandmother was emotionally and mentally abusive to Heather and Iris; that Paternal Grandfather suffered from Parkinson's disease, which placed the children at risk when they were in his care;

3

and that she worked as a server at a restaurant in Wilmington and part-time for a friend's house-flipping company.

(5) A few weeks after the Paternal Grandparents filed their petition for guardianship of Grant, Maternal Grandmother filed a petition for guardianship of Heather and Iris, alleging that Heather and Iris were dependent, neglected, or abused in the Paternal Grandparents' care. Mother supported Maternal Grandmother's petition. Maternal Grandmother also filed a motion for emergency guardianship of Heather and Iris, which the Family Court denied.

(6) The court held a hearing on the petitions for guardianship on November 9, 2018. At the hearing, Maternal Grandmother orally amended her petition, in order to request guardianship of Grant as well.

(7) The testimony provided at the hearing reflected that in mid-October 2018—approximately a year after the grandparents filed their guardianship petitions and just a few weeks before the hearing on the guardianship petitions—Mother and Father separated. Mother moved to Maternal Grandmother's home in Lewes, Delaware, and could no longer work at the restaurant in Wilmington. She therefore applied to truck-driving school and was awaiting financial approval and an opportunity to begin the four-week program. At the time of the separation, Mother and Father placed Grant in the Paternal Grandparents' care, because the parents could not afford daycare and to allow time for Mother to complete her move to

Lewes. After moving to Lewes, Mother applied, and was approved, for the State Purchase of Care program and, using that assistance, had secured a place for Grant at a daycare in Lewes.

(8) At the time of the hearing, Grant had been staying with the Paternal Grandparents for a few weeks. Paternal Grandmother did not allege that Grant was abused when he was living with Mother. But Paternal Grandmother believed that Grant's clothes were not clean and testified that trash and clothes had been strewn around Mother's and Father's house and mattresses were placed on the floor. By contrast, no one provided any testimony that the conditions at Paternal Grandmother's home, where Mother had moved after the parents' separation, were not suitable for children.

(9) The Family Court granted the Paternal Grandparents' petition for guardianship of Grant. The court found that Grant was dependent because (i) Mother was not financially independent, having recently separated from Father and relying on Maternal Grandmother for housing and to pay expenses while Mother "plans to attend school to hopefully obtain a job to support herself"; and (ii) by placing Grant with the Paternal Grandparents, "Mother and Father made the decision that they were unable to care for [Grant] at that time."

(10) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[2] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[3] We review legal rulings *de novo*.[4] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[5] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[6]

(11) On appeal, Mother argues that the Family Court erred by (i) failing to make factual findings sufficient to support the court's conclusion that Grant is dependent, as required by 13 *Del. C.* § 2330(a)(2)(a), and (ii) failing to afford Mother a presumption that returning Grant to her care and custody is in Grant's best interests. Mother also contends that the Family Court's factual findings relating to Grant do not support the court's conclusion that guardianship with the Paternal Grandparents is in Grant's best interests.

(12) Mother did not consent to the Paternal Grandparents' guardianship of Grant. Therefore, under 11 *Del. C.* § 2330(a), before granting a guardianship

---

[2] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[3] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[4] *Id.*
[5] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[6] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

petition the Family Court was required to find that (i) Grant is "dependent, neglected or abused and the reasons therefor" and (ii) it is in Grant's best interests for the guardianship to be granted.[7] The Paternal Grandparents, as the parties seeking guardianship, had the burden of establishing both dependency and best interests by a preponderance of the evidence.[8] The guardianship statute defines dependency in accordance with 10 *Del. C.* § 901.[9] 10 *Del. C.* § 901(8) provides as follows:

> "Dependency" or "dependent child" means that a person:
>
> a. Is responsible for the care, custody, and/or control of the child; and
>
> b. Does not have the ability and/or financial means to provide for the care of the child; and
>
>> 1. Fails to provide necessary care with regard to: food, clothing, shelter, education, health care, medical care or other care necessary for the child's emotional, physical or mental health, or safety and general well-being; or
>>
>> 2. The child is living in the home of an "adult individual" who fails to meet the definition of "relative" in this section on an extended basis without an assessment by DSCYF, or its licensed agency; or
>>
>> 3. The child has been placed with a licensed agency which certifies it cannot complete a suitable adoption plan.
>
> In making a finding of dependency under this section, consideration may be given to dependency, neglect, or abuse history of any party.[10]

---

[7] 11 *Del. C.* § 2330(a)(2).
[8] *Id.*
[9] *See* 13 *Del. C.* § 2302(7) (referring to 10 *Del. C.* § 901 for the definition of dependency).
[10] 10 *Del. C.* § 901(8).

Grandparents are "relatives" under Section 901.[11]

(13)   In this case, the Family Court based its determination of dependency on two facts:  Mother's lack of financial independence and the parents' placing Grant in the care of the Paternal Grandparents in the wake of the parents' separation.  We conclude that these grounds are insufficient to support a finding of dependency under 13 *Del. C.* § 2330(a)(2)(a) and 10 *Del. C.* § 901(8).

(14)   First, the Family Court's factual findings regarding Mother's lack of financial independence are insufficient to support a finding of dependency.  A child is dependent under the statute only if the parent lacks the financial means to provide for the care of the child *and* actually fails to provide necessary care.[12]  The court did not find facts indicating that Grant was not receiving appropriate care when he was living with Mother during the year between when the Paternal Grandparents filed for guardianship and when the guardianship hearing occurred.  The testimony at the hearing reflected that, during that period, Mother worked while Father stayed home with Grant;[13] Mother regularly took Grant to his medical appointments;[14] and Mother was compliant with her methadone treatment and had clean drug screens. Although Mother appears to have relied heavily on family members to provide care for Grant

---

[11] *Id.* § 901(20).
[12] 10 *Del. C.* § 901(b), (b)(1).
[13] Transcript of Hearing, Nov. 9, 2018, at 93-94.
[14] *Id.* at 92-93.

8

while she worked, that is not unusual in many families and neither the Family Court's decision nor the transcript of the hearing indicate that she failed to provide or obtain appropriate care for him at any time. Parents frequently rely on family members to assist with child care, and a parent's enlisting others to help does not establish dependency. Indeed, the statutory definition of dependency supports that conclusion, as extended placement in a nonrelative's home without DSCYF involvement is sufficient to support a finding of dependency, while extended placement in a relative's home is not.[15] Moreover, it was the unfortunate timing of the parents' separation in relation to the hearing—and Mother's accompanying move to Lewes—that resulted in Mother's moving in with her mother and not being employed at the time of the hearing. But, the move to the Maternal Grandmother's house itself cuts against the rationality of the Family Court's ruling. The Mother's mother has a house adequate for children and, along with the Mother, is capable of adequately providing for Grant.

(15) Second, Mother's and Father's decision to entrust Grant to the care of his grandparents during a transitional period also is insufficient to find him dependent. As noted above, a parent's decision to place a child with a relative, as opposed to a nonrelative, is not grounds for a finding of dependency under the

---

[15] 10 *Del. C.* § 901(b)(2).

statute.[16] In addition, although the testimony at the hearing did not reflect that Mother and Father indicated how long they planned for Grant to stay with the Paternal Grandparents, it also did not reflect that they intended it to be a permanent arrangement or that Mother entirely abdicated her responsibilities to care for Grant. Indeed, Mother remained involved with Grant, as evidenced by the fact that shortly after the parents placed Grant in the Paternal Grandparents' care, Paternal Grandmother reported that Grant had a fever and she was going to take him to see the doctor, but Mother insisted that she would take him instead.[17]

(16) We respect that the Family Court is familiar with this family and had determined in 2017 that Heather and Iris remained dependent. But the parents' circumstances may have been different at that time; Heather and Iris are different children than Grant; and Heather has some substantial medical and behavioral issues. We also recognize that the Family Court had the opportunity to assess the credibility of the witnesses, which we do not on a paper record. But the court's written decision does not reflect that the court discounted Mother's credibility regarding her employment and care for Grant in the year preceding the guardianship hearing, nor do the court's reasons for finding dependency indicate that the court found that Mother actually provided insufficient care to Grant during that period. For these

---

[16] *Id.*

[17] Transcript of Hearing, Nov. 9, 2018, at 103:15-23.

10

reasons, we conclude that the Family Court's factual findings, as set forth in its decision, are insufficient to support a determination that the Paternal Grandparents proved, by a preponderance of the evidence, that Grant is dependent under Section 901. In light of our conclusion regarding dependency, we need not reach Mother's arguments concerning the Family Court's application of the best interest factors.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court relating to the guardianship of Grant is REVERSED. The matter is REMANDED to the Family Court for further proceedings consistent with this order. Jurisdiction is not retained.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice