# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CELENE DAWSON,[1] | § | No. 63, 2019 |
| | § | |
| Petitioner Below, | § | |
| Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| TIM DAWSON, | § | File No. CN18-01549 |
| | § | Petition Nos. 18-03076, 18-09356 |
| Respondent Below, | § | |
| Appellee, | § | |
| | § | |
| and | § | |
| | § | |
| TEGAN WARD, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: December 6, 2019
Decided: January 14, 2020

Before **SEITZ**, Chief Justice; **VAUGHN**, and **TRAYNOR**, Justices.

## ORDER

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The appellant, Celene Dawson ("Paternal Grandmother"), and the appellee Tegan Ward (the "Maternal Aunt") each filed a petition for guardianship of Jaden Dawson (the "Child"). The appellee Tim Dawson ("Father") is the Child's

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

father. Paternal Grandmother filed this appeal from a Family Court order that granted guardianship of the Child to the Maternal Aunt and awarded visitation with, but not guardianship of, the Child to the Paternal Grandmother. For the reasons discussed below, we affirm.

(2) The record reflects that the Child lived with his mother ("Mother") and her family until Mother died in March 2018, when the Child was three years old. After his mother's death, the Child lived with Mother's family, including Maternal Aunt. On July 19, 2018, the Family Court awarded temporary guardianship to Maternal Aunt. Mother had not made Father aware of the Child's existence until the fall of 2017. After Father learned that he had a son, he and Paternal Grandmother began visiting with the Child; taking the Child on outings in the community; and giving him clothes, toys, and other items. The Child also had regular overnight visits with Father and Paternal Grandmother in Paternal Grandmother's home. Mother or her family stopped the visits after Paternal Grandmother filed a petition for guardianship in February 2018. Maternal Aunt also sought guardianship of the Child.

(3) Both Paternal Grandmother and Maternal Aunt had stable employment and testified that they were financially able to provide for the Child. Paternal Grandmother lived in a two-bedroom apartment with her adult daughter. Maternal

2

Aunt lived in a five-bedroom home[2] with her long-term partner, their three children (two of whom were young adults), and the Child's 10-year-old half-brother. Maternal Aunt also had guardianship of her sixteen-year-old niece, although the niece lived nearby with another aunt. Maternal Aunt testified that the Child was up-to-date on medical care and vaccinations and was healthy, except that he had been diagnosed with a slightly elevated lead level, which did not require intervention other than periodic monitoring.

(4) The Family Court held a final guardianship hearing on January 10, 2019. Father was incarcerated at the time of the guardianship hearing and supported Paternal Grandmother's petition for guardianship. Following the hearing, the Family Court granted Maternal Aunt's petition. The court found that because Mother is deceased and Father was incarcerated, the Child was dependent in their care. Applying the best-interest factors set forth in 13 *Del. C.* § 722(a), the Family Court found that it was in the Child's best interest that Maternal Aunt's petition for guardianship be granted.[3] The court placed special importance on the third and

---

[2] Paternal Grandmother contends on appeal that Maternal Aunt's home actually has only four bedrooms, not five, but she did not present any evidence to that effect to the Family Court. In any event, we find the difference immaterial to the court's decision.

[3] *See* 13 *Del. C.* § 2330(a)(2) (providing that before granting an order for guardianship in a case in which both parents do not consent to the guardianship, the Family Court shall find (1) that the child is dependent or neglected and (2) that it is in the best interests of the child for the guardianship to be granted).

3

fourth best-interest factors,[4] emphasizing that the Child had always lived with the maternal family and had regular contact with Paternal Grandmother only for a period of a few months, and that residing with Maternal Aunt would keep the Child with his half-brother. The court also found that it was in the Child's best interests to have contact with Paternal Grandmother, and therefore ordered that the Child would have at least two, three-hour visits with her per month, with any additional visitation as agreed upon by the parties.

(5)    On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[5]  We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[6]  We review legal rulings *de novo*.[7]  If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[8]

---

[4] *See* 13 *Del. C.* § 722(a) ("The Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child.  In determining the best interests of the child, the Court shall consider all relevant factors including . . . (3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabiting in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests; (4) The child's adjustment to his or her home, school and community . . . .").

[5] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).

[6] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).

[7] *Id.*

[8] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).

On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[9]

(6)     Paternal Grandmother argues that (i) the Family Court erred by failing to account for the fact that Father consented to guardianship with Paternal Grandmother but did not consent to guardianship with Maternal Aunt; (ii) the neighborhood where Paternal Grandmother lives is safer than the neighborhood where Maternal Aunt lives; and (iii) too many people live in Maternal Aunt's home. Father's counsel filed an answering brief on appeal on Father's behalf. Father argues that guardianship should have been awarded to Paternal Grandmother, contending that the record reflects that Maternal Aunt's home is in a high-crime area, while Paternal Grandmother lives in a gated community in a safe neighborhood, and that this consideration should have outweighed all the other best-interests factors.

(7)     The parties do not dispute that the Child was dependent, and Father did not consent to Maternal Aunt's guardianship. The Family Court therefore appropriately applied the best-interests standard when deciding between competing petitions for guardianship.[10]

---

[9] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[10] *See* 13 *Del. C.* § 2330(a)(2) (establishing standard for determining whether guardianship will be granted); *id.* § 722(a) (setting forth the factors for consideration when determining whether the legal custody and residential arrangements for a child are in the child's best interests).

(8)     After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of the Family Court's order dated January 25, 2019.  The record reflects that the Family Court weighed the best-interests factors in light of the evidence presented at the hearing and there was no error of law.  The Family Court considered the testimony regarding the composition of the two households and the relative safety of the neighborhoods, as well as Father's desire that Paternal Grandmother have guardianship.  The court did not abuse its discretion when affording more weight to the facts that the Child had a closer relationship with the maternal family because he had been residing with them since birth and that he was adjusted to the home and community.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice