# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMANDA WALKER,[1] | § | No. 326, 2025 |
| | § | |
| Petitioner Below, Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 24-11-03TN |
| TOPHER HALLIGAN, | § | Petition No. 24-26531 |
| | § | |
| Respondent Below, Appellee. | § | |

Submitted: January 23, 2026
Decided: March 6, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## <u>ORDER</u>

Upon consideration of the briefs and the record on appeal, it appears to the Court that:

(1)     This is a difficult case.  The appellant ("Mother") sought termination of the parental rights of the appellee ("Father") as to the parties' child (the "Child") so that Mother's husband ("Stepfather"), who has been a loving, supportive stepparent to the child for almost all her life, could adopt her.  The Family Court found that Father had "done little to assert his parental rights" and that his efforts to have a relationship with the Child were "abysmal."  But recognizing the high burden of proof by which a petition to sever the parent-child

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

relationship is tested, the court determined that Mother had not established a statutory ground for termination and denied the petition. For the reasons discussed below, we affirm the Family Court's judgment.

(2) The Child was born in October 2017. In July 2018, Mother filed a petition for an order of protection from abuse ("PFA") against Father. In August 2018, Father filed a petition for paternity adjudication.[2] Father did not appear for the PFA hearing, and on August 29, 2018, a default PFA order was entered against him. Shortly thereafter, Mother filed a petition for custody of the Child, and Father moved to reopen the PFA order, alleging that he had not received notice of the hearing. The Family Court granted Father's motion and scheduled a new PFA hearing but then reinstated the PFA order when Father again failed to appear. In November 2018 and March 2019, Father was found to have violated the PFA order; the PFA no-contact order ultimately remained in place until November 9, 2021. On July 24, 2019, following a hearing for which Father failed to appear, the Family Court granted Mother sole custody and primary residence of the Child.

(3) Mother filed a TPR petition against Father in November 2024 and amended petitions in December 2024 and February 2025. Mother sought termination of Father's parental rights on the grounds of unintentional

---

[2] Father was later adjudicated to be the Child's biological father.

2

abandonment under 13 *Del. C.* § 1103(a)(3) and failure to plan under 13 *Del. C.* § 1103(a)(6).  Stepfather filed a petition for adoption of the Child.

(4)     At the TPR trial on July 14, 2025, each party testified and presented three additional witnesses.  The evidence reflected that Father had not had contact with the Child since the PFA petition was filed and had not provided any support for the Child.  Father asserted that he had last attempted to contact Mother in 2023, but she had blocked his number and moved to an unknown location.  Mother denied blocking communications from Father and asserted that he could have contacted her through her family members.  The Child was thriving in Mother and Stepfather's home, where she also lived with her younger sibling.  She was excelling in school and engaged in numerous extracurricular activities.  Stepfather treated the Child as his own and wanted to adopt her.  The social worker who performed a home study and prepared a social report to accompany the TPR and adoption petitions opined that it would be in the Child's best interests for the TPR and adoption to be granted.  The social worker testified that she had attempted to contact Father when preparing the social report, but he had not responded.

(5)     Father testified that he had a commercial driver's license and worked as a truck driver.  Father, his fiancée, and two of his family members testified about his positive relationship with two of his sons, who spent some time

3

in his care but were not in his full-time custody, and his fiancée's children, who were young adults at the time of trial. Father's sons' mother testified that Father had never paid any child support and that the children had told her that Father was verbally and physically abusive. Father admitted that he had pleaded guilty to patronizing a prostitute and disobeying a police signal; he also admitted that he had been charged with second-degree murder when he was sixteen years old.[3]

(6) In a post-trial decision, the Family Court determined that Mother had not established statutory grounds for termination of Father's parental rights. As to unintentional abandonment, the Family Court found that Father had "done little to assert his parental rights," made "little effort" to communicate with or visit the Child, and had "a history of violence, bad decisions, and threatening behavior toward Mother, Stepfather and the public." But the court concluded that Mother had not established unintentional abandonment under Section 1103(a)(3) because "Mother prohibited Father's contact and contact from paternal relatives," "moved without disclosing her address," "actively sought to stay away from Father," and "created barriers to his contact." The court also found that Mother failed to prove that Father did not pursue the establishment of

---

[3] It is unclear from the record on appeal whether Father was convicted of second-degree murder.

4

paternity, because he sought adjudication of paternity in 2018. Moreover, the court emphasized:

> Most significantly, Mother failed to prove by clear and convincing evidence Father is not able or willing to promptly establish and maintain contact with [the Child] and pay reasonable support for her care. Father's efforts to maintain a relationship with [the Child] were abysmal[;] however[,] now he is willing to promptly establish and maintain contact with her. He filed a Petition to Modify Custody on April 29, 2025, and he agrees to participate in therapy with [the Child] to develop a relationship.
>      Father is also gainfully employed. Though he has not financially supported [the Child] or provided any gifts to her, if Mother files a Petition for Child Support against Father, he can pay reasonable support.

The court therefore concluded that Mother had not proven unintentional abandonment under Section 1103(a)(3).

(7)    Regarding failure to plan, the Family Court found that the Child was both neglected and dependent as to Father—and that Father had failed to discharge parental responsibilities for at least twelve of the eighteen months preceding the filing of the TPR petition—because he had done nothing to provide for the Child's care and support and lacked any relationship with her.[4] The court found that the evidence was not clear and convincing that Father was unlikely to remedy the dependency or neglect in the near future,[5] however, because he was

---

[4] *See* 13 *Del. C.* § 1103(a)(6) (providing for a "private" termination of parental rights if the child "is a dependent child or neglected child in the respondent's care at the time of the hearing" and the Court finds all of four additional factors, including that the "respondent failed to discharge parental responsibilities for at least 12 of the 18 months preceding the filing of the petition").

[5] *Id.* § 1103(a)(6)d.

"parenting two of his children," was "alleged to have a meaningful place in the lives of his stepchildren," had the financial means to provide support, and was willing to engage in therapy to develop a relationship with the Child. Having found that Mother had not demonstrated a statutory basis for termination under Section 1103(a)(3) or (a)(6), the court did not reach the best-interest question.[6]

(8) Mother asserts three arguments on appeal. First, she challenges the Family Court's finding that she did not prove unintentional abandonment under Section 1103(a)(3). Second, she contends that her counsel's performance was deficient, prejudicing her case. And third, she argues that the Family Court erred by not considering whether termination of Father's parental rights was in the Child's best interests.

(9) This Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[7] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are sufficiently supported by the record and its explanations, deductions, and inferences are the

---

[6] *See id.* § 1103(a) (providing that parental rights may be terminated if at least one of the statutory grounds are established and termination "appears to be in the child's best interest").
[7] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).

product of an orderly and logical reasoning process.[8]  We review legal rulings *de novo*.[9]

(10)  The law has recognized parental rights as fundamental liberties, which may not be abrogated absent the most compelling reasons.[10]  The statutory standard for terminating parental rights under Delaware law requires the court to undertake two separate inquiries.  First, the Family Court must determine that the petitioner has established, by clear and convincing evidence, that there is a statutory basis for termination.[11]  Second, the Family Court must find, also by clear and convincing evidence, that termination is in the child's best interest.[12]  "This Court has consistently held that the best interest element of the statute can be considered only *after* there has been a finding of an enumerated statutory basis for termination."[13]  Mother's argument that the Family Court erroneously failed to consider whether termination was in the Child's best interest therefore does

---

[8] *In re Heller*, 669 A.2d 25, 29 (Del. 1995); *see also id.* (stating that this Court can make "independent findings" in a TPR appeal if the Family Court's factual findings are "clearly erroneous").

[9] *Id.*

[10] *Whitmore v. Robinson*, 223 A.3d 417, 421 (Del. 2019); *see also Troxel v. Granville*, 530 U.S. 57, 66 (2000) (stating that parents have a fundamental right, protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, "to make decisions concerning the care, custody, and control of their children").

[11] *Whitmore*, 223 A.3d at 421; *Shepherd v. Clemens*, 752 A.2d 533, 537 (Del. 2000).

[12] *Whitmore*, 223 A.3d at 421; *Shepherd*, 752 A.2d at 537.

[13] *Shepherd*, 752 A.2d at 537.

not warrant reversal unless the Family Court erroneously found that Mother did not sufficiently prove a statutory basis for termination.[14]

(11) Mother contends that she proved that termination was warranted on the basis of unintentional abandonment under 13 *Del. C.* § 1103(a)(3). To terminate a respondent's parental rights based on unintentional abandonment, the Family Court must find, by clear and convincing evidence, that:

> the respondent abandoned the child and the abandonment was unintentional. The respondent's subsequent conduct does not cure the abandonment. Unintentional abandonment is evidenced by both of the following:
>> a. For at least 12 consecutive months of the 18 months preceding the filing of the petition, the respondent has failed to do all of the following:
>>> 1. Communicate or visit regularly with the child.
>>> 2. File or pursue a pending petition to establish paternity or to establish a right to have contact or visitation with the child.
>>> 3. Manifest an ability and willingness to assume legal and physical custody of the child, if the child was not in the physical custody of the other parent during this time.
>
>> b. One or more of the following grounds exists:
>>> 1. The child is not in the other parent's legal and physical custody and the respondent is not able or willing to promptly assume legal and physical custody of the child and pay reasonable support for the child.
>>> 2. The child is in the legal and physical custody of the other parent and a stepparent, and all of the following apply:

---

[14] Mother's argument that her privately retained counsel did not adequately present her case also does not establish a reversible error.

8

A. The stepparent is the prospective adoptive parent.

B. The respondent is not able or willing to promptly establish and maintain contact with the child and pay reasonable support for the child.

3. Placing the child in the respondent's legal and physical custody would pose a risk of substantial harm to the child's physical or psychological well-being because the respondent is unfit to maintain a relationship of parent and child with the child, as indicated by at least 1 of the following:

A. The circumstances of the child's conception.

B. The respondent's behavior during the mother's pregnancy or since the child's birth.

C. The respondent's behavior with respect to another child.

4. Failure to terminate the respondent's parental rights would be detrimental to the child. In determining whether this ground exists, the Court shall consider all relevant factors, including all of the following:

A. The respondent's efforts to obtain or maintain legal and physical custody of the child.

B. The role of another person in thwarting the respondent's efforts to assert parental rights.

C. The respondent's ability to care for the child.

D. The child's age.

E. The quality of a previous relationship between the respondent and child, and between the respondent and another child.

F. The duration and suitability of the child's current custodial environment.

G. The effect on the child of a change of physical custody.[15]

(12)　Thus, to establish unintentional abandonment, Mother was required

to prove (i) *all* the elements of Section 1103(a)(3)a *and* (ii) at least one of the

---

[15] 13 *Del. C.* § 1103(a)(3).

grounds set forth in Section 1103(a)(3)b. We now consider whether the Family Court erroneously determined that Mother failed to meet that burden.

(13) As to Section 1103(a)(3), the third element of that section, subsection a.3, is inapplicable because the Child was in Mother's custody.[16] Moreover, we conclude Section 1103(a)(3)a.2 was satisfied here. The Family Court found that it was not because Father petitioned to adjudicate paternity in 2018. But the statute requires the court to examine Father's conduct during the eighteen months preceding the filing of the petition. If the fact that a parent sought adjudication of paternity years before the filing of a TPR petition could satisfy Section 1103(a)(3)a.2, then such parent's rights could never be terminated on the basis of later unintentional abandonment. Because Father did not file or pursue a petition to establish a right to have contact or visitation with the Child in the eighteen months preceding Mother's filing of the TPR petition, Section 1103(a)(3)a.2 is satisfied.

(14) Whether Mother met her burden under Section 1103(a)(3)a therefore turns on whether Father "communicate[d] or visit[ed] regularly" with the Child for a consecutive twelve-month period in the eighteen months

---

[16] *See id.* § 1103(a)(3)a.3 (requiring petitioner to show that, for at least twelve consecutive months of the eighteen months preceding the filing of the TPR petition, the respondent failed to "[m]anifest an ability and willingness to assume legal and physical custody of the child, *if* the child was not in the physical custody of the other parent during this time" (emphasis added)).

preceding the TPR filing.[17] It is undisputed that Father did not actually communicate or visit with the child for several years before the TPR petition was filed. The Family Court found that Father could not be faulted for that failure because Mother prevented him from having contact with the Child by blocking his number and not telling him where Mother and the Child had relocated. Mother asserts that she did not block his number and, in any event, Father could have contacted her through relatives.

(15) This Court does not appear directly to have considered the extent to which a petitioner's role in preventing contact between the respondent and the child is relevant to the determination of whether the respondent regularly communicated or visited with the child under Section 1103(a)(3)a.1.[18] Because a parent can seek intervention from the Family Court if the other parent prevents contact with a child, and because whether the sidelined parent seeks such relief is the relevant inquiry under Section 1103(a)(3)a.2, we are inclined to view the

---

[17] *Id.* § 1103(a)(3)a.1.

[18] *But cf. Storm v. Dep't Servs. for Children, Youth & Their Families*, 2025 WL 3046402 (Del. Oct. 31, 2025) (affirming termination of a father's parental rights based on unintentional abandonment and failure to plan and stating that father had visited with the child until the child's grandmother stopped responding to his texts and calls); *Tannis v. Moen*, 268 A.3d 754, 2021 WL 5858692 (Del. Dec. 10, 2021) (TABLE) (affirming termination of father's parental rights based on unintentional abandonment and failure to plan and stating that "on multiple occasions" the father had asked for pictures of the child and updates on the child's milestones but that he had failed to follow through with visits, had last visited with the child more than a year before the TPR petition was filed, had been incarcerated for much of the child's life, and had failed to participate in a court-ordered social study).

11

inquiry under Section 1103(a)(3)a.1 as concerning the extent of actual contact between the respondent and the child. But we need not resolve that issue in this case if the Family Court correctly held that Mother did not establish one of the additional grounds for termination under Section 1103(a)(3)b.

(16) We conclude that Mother has not shown that the Family Court erred by determining that she did not meet her burden of proving a basis for termination under Section 1103(a)(3)b. Section 1103(a)(3)b.1 does not apply because the Child was in Mother's custody.[19] Mother did not argue at trial that Sections 1103(a)(3)b.3 or 1103(a)(3)b.4 were satisfied; instead, she focused on Section 1103(a)(3)b.2.[20] Under that section, Mother was required to prove that the Child was in the custody of Mother and Stepfather; Stepfather was the prospective adoptive parent; and Father was "not able or willing to promptly establish and

---

[19] *See* 13 *Del. C.* § 1103(a)(3)b.1 (providing for termination on the grounds of unintentional abandonment if Section 1103(a)(3)a is satisfied and the "child is not in the other parent's legal and physical custody and the respondent is not able or willing to promptly assume legal and physical custody of the child and pay reasonable support for the child").

[20] Mother's counsel did not cite the subsection on which Mother was relying, but in his closing statement he argued that Father had not had contact with the Child or filed a petition for custody or visitation during the relevant period; Father had not manifested an ability or willingness to assume physical custody; Stepfather was the prospective adoptive parent; and TPR was in the Child's best interests. *See* File No. 24-11-03TN, Petition No. 24-6531, Trial Transcript, at 123:4-125:6 (Del. Fam. Ct. July 14, 2025). That argument implicitly invoked Section 1103(a)(3)a.1-3 and Section 1103(a)(3)b.2. It did not invoke Section 1103(a)(3)b.3, which requires proof that "[p]lacing the child in the respondent's legal and physical custody would pose a risk of substantial harm to the child's physical or psychological well-being because the respondent is unfit to maintain a relationship of parent and child with the child," or Section 1103(a)(3)b.4, which requires proof that "[f]ailure to terminate the respondent's parental rights would be detrimental to the child," based on consideration of enumerated factors. 13 *Del. C.* § 1103(a)(3)b.3-4.

12

maintain contact" with the Child and pay reasonable support for her.[21]  The Family Court found that Father could pay reasonable support and was able and willing to promptly establish and maintain contact with the Child, including by participating in therapy with the Child in order to reestablish their relationship. The court's factual findings as to that issue were sufficiently supported by the record, and we therefore decline to disturb the court's ruling.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[21] 13 *Del. C.* § 1103(a)(3)b.2.