IN THE SUPREME COURT OF THE STATE OF DELAWARE

JADE ROWE,[1] §
§ No. 123, 2021
　　　Respondent Below, §
　　　Appellant, § Court Below—Family Court
§ of the State of Delaware
　　　v. §
§ File No. CN19-01159
DEPARTMENT OF SERVICES FOR § Petition No. 19-01137
YOUTH & FAMILIES/DIVISION §
OF FAMILY SERVICES, §
§
　　　Petitioner Below, §
　　　Appellee. §

Submitted: February 16, 2022
Decided:　April 8, 2022

Before **SEITZ**, Chief Justice; **VALIHURA** and **MONTGOMERY-REEVES**, Justices.

## ORDER

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), her attorney's motion to withdraw, the response of the Department of Services for Children, Youth and Their Families/Division of Family Services ("DFS"), and the response of the attorney *ad litem*, it appears to the Court that:

(1)　The respondent below-appellant, Jade Rowe ("the Mother"), filed an appeal from the Family Court's decision, dated March 23, 2021, terminating her

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

parental rights to her son ("the Child").[2] On appeal, the Mother's counsel ("Counsel") has filed an opening brief and motion to withdraw under Supreme Court Rule 26.1(c).[3] Counsel represents that he has made a conscientious review of the record and the law and found no meritorious argument in support of the appeal. The Mother has not submitted any points for the Court's consideration.[4] In response to Counsel's submission, DFS and the Child's attorney *ad litem* have moved to affirm the Family Court's termination of the Mother's parental rights. After careful consideration, this Court concludes that the Family Court's judgment should be affirmed.

(2) The Child was born in December 2018. On January 16, 2019, DFS filed an emergency petition for custody of the Child. DFS alleged that the Child had a brain disorder, the Mother had not been available to sign for needed medical procedures, and DFS had been unable to locate a suitable relative to care for the Child upon his discharge from the hospital. The Family Court granted the petition.

(3) At the preliminary protective hearing on January 23, 2019, the Family Court appointed counsel to represent the Mother. The Family Court found that there

---

[2] The Family Court also terminated the parental rights of the Child's father, who is not a party to this appeal. We only recite the facts in the record as they relate to the Mother's appeal.

[3] We note that Counsel filed multiple papers in November 2021, January 2022, and February 2022 that failed to comply with Rule 26.1(c). We warn Counsel to be more careful in the future, or he could face sanctions or disciplinary action under Supreme Court Rule 33.

[4] Although Counsel incorrectly includes the Mother's arguments at the TPR hearing as points in his Rule 26.1(c) brief, he also represents that the Mother did not submit any points in response to his letter informing her that she could submit any points that she wished the Court to consider.

was probable cause to believe the Child was dependent because the Mother was recently released from prison, tested positive for cocaine a few days before the Child's birth, and the Child was born with a rare birth defect, agenensis of the corpus callosum, that would require long-term care. With agenensis of the corpus callosum, there is a complete or partial absence of the connection between the left and right hemispheres of the brain. The court held that DFS had made reasonable efforts to prevent the unnecessary removal of the Child from the home.

(4) On February 19, 2019, the Family Court held an adjudicatory hearing. A DFS employee testified that the Mother had provided the names of maternal relatives as possible placement resources, but DFS believed they were not appropriate based on their criminal or DFS history. The Child was doing well with a foster family. The Mother was residing with her mother ("the Maternal Grandmother"), brother, and his girlfriend in a one-bedroom trailer. The Mother testified that she had been in and out of prison over the last five years due to her drug addiction and that she was not sure of the identity of the Child's father. The Mother was having weekly, three-hour visits with the Child. The Family Court found that the Child continued to be dependent and should remain in DFS custody.

(5) On March 19, 2019, the Family Court held a dispositional hearing. The Mother's executed case plan was admitted into evidence. The elements of the Mother's case plan included obtaining and maintaining appropriate housing,

3

maintaining consistent employment, and continuing substance abuse and mental health treatment with Connections. The Mother had moved, and was renting a room from her brother. She testified that she was presently employed through Easterseals as a caregiver for the Maternal Grandmother, and was looking for additional employment. She also testified that there were no family members who could be a potential placement resource. The Mother testified that she enjoyed weekly visits with the Child, but an employee of the foster care agency testified that the Mother had missed three visits because she was confused about the correct date of one visit and failed to confirm two other visits. The Family Court found that the Child continued to be dependent and should remain in DFS custody.

(6)     The Family Court held pre-permanency hearings on May 31, 2019, August 23, 2019, and November 14, 2019. At these hearings, there was testimony that the Mother had moved back into the Maternal Grandmother's one-bedroom trailer. A maternal uncle with a criminal history that concerned DFS also resided there at times. DFS did not believe the trailer was an appropriate residence for the Child.

(7)     The Mother earned approximately $400.00 bi-weekly as a caregiver for the Maternal Grandmother, plus $197.00 a month in food stamps. The Mother attended counseling sessions with Connections and was prescribed medications for

4

anxiety, depression, and sleeping. There was also testimony that the Mother had been diagnosed with manic depressive disorder.

(8) The Mother's drug screens were negative until July 24, 2019 and August 8, 2019 when she tested positive for cocaine and opiates. At the end of August and beginning of September, the Mother received inpatient treatment at MeadowWood Behavioral Hospital. As a result of the Mother's positive drug screens, the Mother's visits with the Child were reduced from weekly four-hour, unsupervised visits to weekly three-hour, supervised visits. The Mother was good with the Child during visits, but inconsistent in her visitation with the Child. There was testimony that the Child was doing well with his foster family, receiving occupational therapy, and going to medical appointments. At each of the pre-permanency hearings, the Family Court found that the Child was dependent and should remain in DFS custody. The Family Court found that the Child continued to be dependent and should remain in DFS custody.

(9) On December 6, 2019, DFS filed a motion to change goal from reunification to concurrent goals of reunification and termination of parental rights for purposes of adoption. A permanency hearing was scheduled for December 23, 2019, but then rescheduled for February 6, 2020 as a result of the Family Court judge's illness. The Family Court held a review hearing on December 23, 2019. During the review hearing, the Mother testified that she planned to move into a new

trailer with her boyfriend of the last three years and another daughter who resided with her paternal grandmother. She identified her boyfriend as the Child's potential father for the first time.[5] She provided conflicting testimony concerning her knowledge of the boyfriend's prior criminal history. The Family Court found that the Child continued to be dependent and should remain in DFS custody.

(10) On February 6, 2020, February 17, 2020, and June 9, 2020, the Family Court held a trifurcated permanency hearing. COVID-19 caused the last hearing date to be changed twice. The Family Court granted DFS' motion to change goal, finding that the Mother's case plan remained incomplete. The Mother tested positive for fentanyl in September and October 2019. She also tested positive for cocaine in September 2019 and December 2019. The Mother attended one-on-one therapy at Connections, but failed to attend group therapy as recommended and was discharged from the program. The Mother continued to work as a caregiver for the Maternal Grandmother. The Mother had virtual visits with the Child several times a week. There were plans to resume in-person visits soon. DFS employees testified that the Mother's new home was appropriate, but had concerns about her boyfriend living there based on his extensive criminal history.

(11) On August 5, 2020, the Family Court held a post-permanency hearing. A Delaware City police officer testified that the Mother was arrested for aggravated

---

[5] Subsequent DNA testing excluded the Mother's boyfriend as the father of the Child.

menacing, possession of a deadly weapon during the commission felony, and other charges arising from a fight with her boyfriend in June 2020. DFS employees testified that the Mother had ignored their instructions not to bring her boyfriend to visits with the Child, been late for a visit, and behaved inappropriately during a visit. The Child was doing well with his foster family. The Family Court found that the Child continued to be dependent and should remain in DFS custody.

(12) A termination of parental rights hearing was scheduled for October 28, 2020, but was changed to a post-permanency hearing after the Family Court did not receive a termination for parental rights petition before the hearing. The Mother continued to earn approximately $400.00 bi-weekly as a caregiver for the Maternal Grandmother. The Mother claimed not to be in contact with her boyfriend, but he paid her lot rent. A relative that the Mother had previously identified as a potential guardian was no longer a placement resource, but the Mother said one of her nieces was interested in being a permanent guardian for the Child. DFS had not received the Mother's drug screens since June 2020. The Mother was generally consistent with visitation, but some visits had to be cancelled for lack of COVID-19 tests.

(13) The Family Court held a termination of parental rights hearing on February 16, 2021, and heard closing arguments on March 3, 2021. The Family Court heard testimony from the Mother, the Mother's therapist at Connections, a police officer, the Mother's family interventionist, DFS employees, a Children's

Choice caseworker, one of the Child's foster parents, the Mother's ex-boyfriend, the Maternal Grandmother, and the Mother's brother. The testimony reflected that the Mother had moved in with a brother, and was paying $400.00 a month in rent. DFS had not done a home assessment. The Mother continued to earn approximately $400.00 bi-weekly as a caregiver for the Maternal Grandmother. She had also earned $600.00 a week through a staffing agency for several months, but that work had ended and she expected to receive unemployment benefits.

(14) A Connections therapist testified that she had been seeing the Mother consistently for eighteen months. The Mother had originally been diagnosed with severe opiate abuse disorder, cocaine stimulant use disorder, and bipolar disorder. The Mother could have done urine screens with Connections, but was going to a doctor's office for urine screens instead. DFS had not received any urine screens for the Mother since September 2020.

(15) A Delaware City police officer testified that in November 2020 he responded to an incident in which the Mother threatened her ex-boyfriend with a baseball bat and took his car without permission. She was charged with aggravated assault and breach of release because there was a no-contact order between her and the ex-boyfriend. The charges arising from the Mother's June 2020 incident with her ex-boyfriend remained pending.

(16) The family interventionist testified that the Mother's interaction with the Child was appropriate during visits, but that the Mother sometimes cancelled visits or left visits early because she was tired or had other obligations. Other visits had to be cancelled because attendees did not have negative COVID-19 tests. At one point, the Mother informed the family interventionist she was longer going to case plan because her niece was going to obtain custody of the Child. A DFS employee testified that the niece identified by the Mother as a placement resource did not pursue permanent guardianship or adoption as preferred by DFS.

(17) The Mother's ex-boyfriend, the Maternal Grandmother, and the Mother's brother testified that the Child should be with the Mother. There was testimony that the Child was doing very well with his foster family, who wanted to adopt him.

(18) On March 23, 2021, the Family Court issued a decision terminating the parental rights of the Child's parents. As to the Mother, the Family Court found by clear and convincing evidence that the Mother had failed to plan adequately for the Child's needs under 13 *Del. C.* § 1103(a)(5). The Family Court also found that the Child had been in DFS care for more than a year, the Mother had failed to maintain appropriate housing, the Mother had failed to obtain sufficient income or employment to support herself and the Child, the Mother had not complied with all of the mental health and substance abuse recommendations, and the Mother's

9

visitation with the Child was inconsistent. The Family Court next considered the best interest factors under 13 *Del. C.* § 722, and found by clear convincing evidence that termination of the Mother's parental rights was in the best interest of the Child. Finally, the Family Court held that DFS had made reasonable efforts to reunify the family.

(19) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[6] We review legal rulings *de novo.*[7] We conduct a limited review of the Family Court's factual findings to assure that they are supported by the record and are not clearly wrong.[8] The Court will not disturb inferences and deductions supported by the record and the product of an orderly and logical reasoning process.[9] If the Family Court correctly applied the law, our review is limited to abuse of discretion.[10]

(20) The statutory procedure for terminating parental rights requires two separate inquires.[11] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[12] When the statutory basis for termination of parental rights is failure to plan adequately for the child's

---

[6] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[7] *Id.*
[8] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).
[9] *Id.*
[10] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[12] 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).

needs under Section 1103(a)(5) and the child is in DFS custody, there must be proof of a least one additional statutory factor under Section 1103(a)(5).[13]  Second, the Family Court must determine whether termination of parental rights is in the best interest of the child.[14]  Both of these requirements must be established by clear and convincing evidence.[15]

(21)  After careful consideration of the parties' positions and the record on appeal, we conclude that the Mother's appeal is wholly without merit.  There is ample evidence supporting the Family Court's termination of the Mother's parental rights based on failure to plan and that such termination is clearly in the best interest of the Child.  We find no error in the Family Court's application of the law to the facts and no abuse of discretion in the Family Court's factual findings.

---

[13] *Powell*, 963 A.2d at 731.

[14] *Id.*  The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding his custodians and residential arrangements; (iii) the interaction and interrelationship of the child with his parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722(a).

[15] *Powell*, 963 A.2d at 731.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Collins J. Seitz, Jr.
Chief Justice