IN THE SUPREME COURT OF THE STATE OF DELAWARE

YESSICA MORRIS,[1] §
§ No. 228, 2022
    Respondent Below, §
    Appellant, § Court Below—Family Court
§ of the State of Delaware
    v. §
§ File No. CN22-03-13TN
DEPARTMENT OF SERVICES FOR § Petition No. 22-05989
CHILDREN, YOUTH & THEIR §
FAMILIES/DIVISION OF FAMILY §
SERVICES, §
§
    Petitioner Below, §
    Appellee. §

Submitted: November 1, 2022
Decided: December 21, 2022

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## <u>ORDER</u>

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), her attorney's motion to withdraw, the response of the Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS"), and the response of the Office of Child Advocate ("OCA"), it appears to the Court that:

(1) The respondent below-appellant, Yessica Morris ("the Mother"), filed an appeal from the Family Court's order, dated June 7, 2022, terminating her

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

parental rights to her daughter ("the Child").[2]  On appeal, the Mother's counsel ("Counsel") has filed an opening brief and motion to withdraw under Supreme Court Rule 26.1(c).  Counsel represents that she has made a conscientious review of the record and the law and found no meritorious argument in support of the appeal.  The Mother has not submitted any points for the Court's consideration.  In response to Counsel's submission, DFS and OCA ask this Court to affirm the Family Court's termination of the Mother's parental rights.  After careful consideration, this Court concludes that the Family Court's judgment should be affirmed.

(2)    The Child was born in late June 2021.  On July 7, 2021, DFS filed an emergency petition for custody of the Child.  DFS alleged that the Mother was in the hospital for a psychiatric disorder and that the maternal grandmother had been caring for the Child.  During a visit to the maternal grandmother's house, a DFS investigation worker found that the house was a mess with trash and beer cans everywhere.  The maternal grandmother's two sons, one with a no-contact order as to the maternal grandmother and one who was visibly inebriated during the visit, were helping the maternal grandmother care for the Child.  The Family Court granted the petition.

(3)    At the preliminary protective hearing on July 14, 2021, the Family

---

[2] The Family Court also terminated the parental rights of the Child's father, who is not a party to this appeal.  We only recite the facts in the record as they relate to the Mother's appeal.

Court appointed counsel to represent the Mother. The Mother was not present because she was hospitalized at MeadowWood Behavioral Health. A DFS employee testified about the Mother's concerning behavior after her discharge from the hospital with the Child and her subsequent admission to MeadowWood. The employee also testified about the poor condition of the maternal grandmother's house. The maternal grandmother had a history with DFS and had been substantiated at Level 3 for severe medical neglect. None of the caregivers in the maternal grandmother's house were appropriate. After one night at the hospital for assessment, the Child was doing well with a foster family. The Family Court found that there was probable cause to believe the Child was dependent and that DFS had made reasonable efforts to prevent the unnecessary removal of the Child from the home.

(4) On August 26, 2021, the Family Court held an adjudicatory hearing. A Children & Families First employee testified about her interactions with the Mother and the events leading to the Mother's admission to MeadowWood. The Mother was coherent and affectionate with the Child after the Child's birth, but several days later the Mother was incoherent and nonresponsive to questions. MeadowWood's director of clinical services testified that the Mother was involuntarily admitted on July 6, 2021 and discharged on July 26, 2021. During her stay, the Mother's mood was unstable, she had delusions, and she had assaulted a staff member. She was

3

more stable at the time of her discharge. The Mother's diagnosis upon discharge included schizophrenia and personality disorders. She received instructions to take certain medications.

(5) A DFS employee testified that the main concerns were the Mother's substantial history of unstable mental health, failure to take her prescribed medication consistently, and inability to obtain stable housing and care for the Child financially. The Mother had one supervised visit with the Child on August 12th, but missed two subsequent visits. The Child continued to do well with a foster family. The Mother, who was living at a motel, testified that she wanted to raise the Child. She also testified that a psychologist spoke to her on a monthly basis and that she was administered medications on a weekly basis. The Family Court found that the Child continued to be dependent and should remain in DFS custody.

(6) On September 21, 2021, the Family Court held a dispositional hearing. The Mother failed to appear for the hearing. DFS had developed a case plan for the Mother, but was unable to review it with her. The elements of the Mother's case plan included continuation of her mental health treatment and compliance with her mental health treatment provider's recommendations, completion of a substance abuse evaluation to determine if treatment was necessary, resolution of her outstanding criminal charges, completion of a parenting class, and obtaining and maintaining employment and appropriate housing.

(7) The Mother had recently refused a prescribed injection and it was unclear if she was taking her oral medications. She had tested positive for marijuana and benzodiazepine. She had left the motel and returned to her maternal grandmother's home, which DFS had previously determined was inappropriate. She received approximately $700.00 a month in disability payments. The Mother had three visits with the Child in September, with two visits going well and the Mother being unsure how to handle the Child's fussiness during another visit. The Child was doing well with her foster family. The Family Court adopted the case plan for the Mother and found that the Child continued to be dependent and should remain in DFS custody.

(8) The Family Court held a review hearing on December 17, 2021. The Mother failed to appear. A DFS employee testified that she reviewed the case plan with the Mother in October. At that time, the Mother objected to elements of the case plan and refused to sign it. It was unknown if the Mother was taking all of her prescribed medications. The Mother had not obtained a substance abuse evaluation. The family interventionist testified that the Mother failed to appear for three scheduled meetings, but finally appeared for a meeting in November. Since the end of October, the Mother had attended four supervised visits with the Child and missed three visits. The Mother had moved out of the maternal grandmother's house and moved into the house of another relative that DFS did not consider an appropriate

5

placement resource. The Child was doing well with her foster family. The Family Court found that the Child continued to be dependent and should remain in DFS custody.

(9) After a February 24, 2022 meeting of the permanency planning committee, DFS filed a motion to amend the permanency plan from reunification to termination of parental rights for purposes of adoption. The Family Court held a permanency hearing on March 8, 2022. The Mother arrived late for the hearing.

(10) A DFS employee testified that the Mother was not complying with her case plan. On December 28, 2021, the Mother was involuntarily admitted to Wilmington Hospital for low blood sugar and psychosis. She was under psychiatric care until she was discharged on February 23, 2022. Before her admission, the Mother was not compliant with her mental health treatment and medications. The Mother had been compliant since her discharge on February 23, 2022.

(11) The Mother had not obtained a substance abuse evaluation or completed a parenting class. She testified that she was in the process of obtaining employment. The Mother had an interview for housing with a roommate, but the Child would not be permitted to reside there. The Mother had a visit with the Child on December 6, 2021 and March 4, 2022. The Child was bonding with her foster family, which was an adoptive resource for the Child. The Child was seeing a physical therapist at daycare and making progress in sitting up. The Family Court

6

granted DFS's motion to amend the permanency plan from reunification to termination of parental rights for purposes of adoption

(12) The Family Court held a termination of parental rights hearing on June 6, 2022. The Mother failed to appear for the hearing. The Family Court heard testimony from an employee of the Resources for Human Development, which had provided outpatient mental health services to the Mother since January 2020, DFS employees involved in the Mother's case, the Child's foster parents, and the court appointed special advocate appointed to represent the Child. The testimony reflected that the Mother was living in a supervised apartment setting that did not permit overnight guests, receiving bi-monthly shots for her psychiatric disorders, and not taking all of her prescribed medications. The Mother's engagement with her mental health treatment was sporadic. She had not obtained a substance abuse evaluation or completed a parenting class, her criminal charges were unresolved, and she had only attended approximately 40% of scheduled visits with the Child. There was no indication that the Mother had obtained employment.

(13) At the conclusion of the hearing, the Family Court issued a bench decision terminating the Mother's parental rights. The Family Court also issued a written order terminating the Mother's parental rights. The Family Court found by clear and convincing evidence that the Mother had failed to plan adequately for the Child's needs under 13 *Del. C.* § 1103(a)(5). The Mother had not complied with her

7

mental health treatment provider's recommendations, obtained housing appropriate for the Child, obtained a substance abuse evaluation, or completed a parenting class. It was unknown if the Mother had obtained employment, but it appeared unlikely. The Child come into care as an infant and been in DFS custody for at least six months. The Family Court also considered the best interest factors under 13 *Del. C.* § 722, and found by clear convincing evidence that termination of the Mother's parental rights was in the best interest of the Child. The Family Court found that DFS had established by clear and convincing evidence that it had employed reasonable efforts to reunify the Child with her parents.

(14) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[3] We review legal rulings *de novo*.[4] We conduct a limited review of the Family Court's factual findings to assure that they are supported by the record and are not clearly wrong.[5] The Court will not disturb inferences and deductions supported by the record and the product of an orderly and logical reasoning process.[6] If the Family Court correctly applied the law, the standard of review is abuse of discretion.[7]

(15) The statutory procedure for terminating parental rights requires two

---

[3] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[4] *Id.*
[5] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).
[6] *Id.*
[7] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).

separate inquires.[8]  First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[9]  When the statutory basis for termination of parental rights is failure to plan adequately for the child's needs under Section 1103(a)(5) and the child is in DFS custody, there must be proof of a least one additional statutory factor under Section 1103(a)(5).[10]  Second, the Family Court must determine whether termination of parental rights is in the best interests of the child.[11]  Both of these requirements must be established by clear and convincing evidence.[12]

(16)   The Mother has not submitted any points for this Court's consideration on appeal. Counsel represents that she has determined that no arguably appealable issue exists, but also states that if "required to make an argument" she would argue that the Family Court failed to give sufficient weight to certain best-interest factors.[13]

---

[8] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[9] 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).

[10] *Powell*, 963 A.2d at 731.

[11] *Id.*   The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722(a).

[12] *Powell*, 963 A.2d at 731.

[13] Opening Brief at 11.  Once counsel has made a conscientious examination of the record and the law and concluded that the appeal is wholly without merit, she should not make hypothetical arguments that she has determined to be without merit. Rather, counsel should refer to any facts,

Specifically, the Mother's wishes under the first factor, her love for the Child and the impact of her mental health on her relationship with the Child under the third factor, and her follow-up with her mental health treatment under the sixth factor. We find no merit to this hypothetical argument.

(17) In determining that termination of parental rights was in the Child's best interests, the Family Court emphasized the third (the interaction and interrelationship of the child with her parents and others), fourth (the child's adjustment to her home, school, and community), fifth (the mental and physical health of all individuals involved), and sixth (past and present compliance by both parents with their rights and responsibilities to the child) best-interest factors. The Family Court found that the Mother was unable to maintain a relationship with the Child, the Mother's mental health issues and sporadic compliance with her mental health treatment prevented her from providing a stable home for the Child, and the Mother was not capable of meeting the Child's needs. The Mother's wishes, love for the Child, and sporadic compliance with her mental health treatment do not outweigh the other best-interest factors weighing in favor of termination of her parental rights. The court may give different weights to different factors, and may decide that one or a few of the factors outweigh the remaining factors.[14]

---

evidence, or significant pretrial and trial applications and rulings that may support the appeal and provide the appellant's points, if any. Del. Supr. Ct. R. 26.1(c)(i).
[14] *Powell*, 963 A.2d at 735.

10

(18)   Having considered the parties' positions and the record on appeal, we conclude that the Mother's appeal is wholly without merit.  There is ample evidence supporting the Family Court's termination of the Mother's parental rights based on failure to plan and that such termination is clearly in the Child's best interests.  We find no error in the Family Court's application of the law to the facts and no abuse of discretion in the Family Court's factual findings.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

11