IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| SAMUEL HUGHES,[1] | § |
| | § No. 343, 2023 |
|     Respondent Below, | § |
|     Appellant, | § Court Below—Family Court |
| | § of the State of Delaware |
|     v. | § |
| | § File No. 23-03-14TN |
| DEPARTMENT OF SERVICES FOR | § Petition No. 23-06101 (N) |
| CHILDREN, YOUTH & THEIR | § |
| FAMILIES/DIVISION OF FAMILY | § |
| SERVICES, | § |
| | § |
|     Petitioner Below, | § |
|     Appellee. | § |

Submitted: February 5, 2024
Decided: March 28, 2024

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

### ORDER

Upon consideration of the brief and the motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1)    The respondent below-appellant, Samuel Hughes ("Father"), filed this appeal from the Family Court's order, dated September 11, 2023, terminating his parental rights to his son (the "Child").[2]  On appeal, Father's counsel ("Counsel")

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

[2] The Family Court also terminated the parental rights of the Child's mother ("Mother"), who is not a party to this appeal. We only recite the facts in the record as they relate to Father's appeal.

has filed an opening brief and motion to withdraw under Supreme Court Rule 26.1(c). Counsel represents that he has made a conscientious review of the record and the law and found no meritorious argument in support of the appeal. Counsel also informed Father of the provisions of Rule 26.1(c), provided him with a copy of the motion to withdraw and the accompanying brief, and advised him of his right to submit points for the Court's consideration. Father submitted points for the Court's consideration. The Department of Services for Children, Youth and Their Families/Division of Family Services ("DFS") and the Child's attorney argue that the Family Court's judgment should be affirmed. After careful consideration, this Court concludes that the Family Court's judgment should be affirmed.

(2) The Child was born substance-exposed in 2018. DFS began working with both parents in January 2021. Under safety plans with DFS, the Child was not to be left alone with or picked up from daycare by Mother, who suffered from mental health and substance abuse problems. After Father left the Child alone with Mother and the Child was found wandering in and out of traffic by himself on May 22, 2022, DFS filed an emergency petition for custody on May 23, 2022. The Family Court granted the petition.

(3) At the preliminary protective hearing on June 1, 2022, DFS employees testified that the parents had violated multiple safety plans requiring that the Child not be left alone with Mother. Father testified that Mother was addicted to PCP and

2

admitted that he made a mistake in leaving the Child alone with Mother on May 22, 2022. Father also testified that he lacked support in Delaware, but had family support in Pennsylvania and expressed a willingness to move there so his family could help him with the Child. The Family Court found that there was probable cause to believe the Child was in substantial imminent risk of physical, mental, or emotional danger, it was in the Child's best interests to remain in DFS custody, and DFS had made reasonable efforts to prevent the unnecessary removal of the Child from the home.

(4)  On June 29, 2022 and July 12, 2022, the Family Court held the adjudicatory hearing. Father claimed that he did not leave the Child with Mother on May 22, 2022, but took him to the liquor store where he wandered away from Father. The Family Court found this testimony not credible. Although Father had expressed willingness to move to Pennsylvania where he had family, he was still living in Delaware with Mother. The Family Court concluded that the Child was dependent, it was in the Child's best interests to remain in DFS custody, and DFS was making reasonable efforts toward reunification.

(5)  On August 8, 2022, the Family Court held the dispositional hearing and approved Father's case plan. The elements of Father's case plan included obtaining and maintaining housing separate from Mother, a parenting class that Father had already completed, and identification of friends, family members, and community

resources that could help him with the Child. The Family Court concluded that the Child was dependent, it was in the Child's best interests to remain in DFS custody, and DFS was making reasonable efforts toward reunification.

(6) The Family Court conducted a paper review in lieu of a review hearing on October 17, 2022 and held review hearings on November 28, 2022 and February 23, 2023. Throughout this process, the Family Court found that Father was making progress on his case plan. He had obtained housing in Pennsylvania and the necessary study under the Interstate Compact on the Placement of Children ("ICPC") was underway. Father consistently visited the Child, but was observed dozing off during several visits.

(7) The Child was doing well in foster care. Other than a large number of cavities discovered at a December 2022 dentist appointment, he was healthy. The Family Court found that the Child continued to be dependent and should remain in DFS custody. On March 13, 2023, DFS filed a motion to change the permanency plan.

(8) On May 16, 2023, the Family Court held the permanency hearing. Father had moved to a new address in Pennsylvania and a new ICPC study was underway. Father had not missed any visits with the Child, but there were concerns that Father failed to correct the Child when he misbehaved and just let him play with his phone. As a result of a domestic violence incident in which Mother was the

4

victim, Father had been charged with second-degree assault and strangulation. He consented to a protection-from-abuse ("PFA") order that included his agreement to pay Mother's rent for six months. The court granted DFS's request to modify Father's case plan, requiring him to complete a parenting class for single fathers and a class for perpetrators of domestic violence. The court also granted DFS's motion to change the permanency plan to concurrent goals of reunification and termination of parental rights.

(9) The Family Court held the termination of parental rights hearing on August 11, 2023 and another hearing to obtain additional information on August 28, 2023. Over the course of the hearings, the Family Court heard testimony from both parents, the DFS treatment worker who worked with both parents, the DFS adoption worker, a Better Chance for Our Children employee who was the child and family specialist, Child, Inc. and CORAS Wellness & Behavioral Health employees who worked with Mother, and the Child's Court Appointed Special Advocate ("CASA"). Mother testified that she and Father had a fight in March 2023 that culminated in Father hitting her with a flowerpot and strangling her. As a result of this incident, Mother suffered a concussion and broken nose and had to go to the hospital. Father had told DFS he was living in his own apartment in Pennsylvania, but Mother testified that he was living with her at the time of the March 2023 incident. Mother

5

also testified that Father had violated the subsequent PFA order by calling her, coming to her apartment, and failing to pay her rent.

(10) The DFS treatment worker testified that even if the ICPC was approved for Father's new apartment in Pennsylvania, DFS would oppose the Child returning to Father's care. DFS was concerned by the March 2023 domestic violence incident and Father's refusal to do the parenting class for single fathers and the domestic violence class required by his amended case plan. Father was consistent in his visitation with the Child, but DFS had concerns regarding the amount of time that the Child spent on Father's phone during visitation. Father's relatives in Pennsylvania were willing to support Father if the Child was placed with him, but they were not placement resources for the Child and had not visited him while he was in DFS custody.

(11) Father had pending charges for second-degree assault, strangulation, and other crimes arising from the March 2023 incident with Mother. After being advised of his Fifth Amendment right against self-incrimination, Father testified and disputed much of Mother's testimony. Father denied living with Mother in March 2023 and said Mother initially claimed he hit her with a frying pan, not a flowerpot. He claimed that they both fell during the March incident and he did not know how Mother suffered a concussion or broken nose. Father also testified that he had been paying Mother's rent directly to her landlord until recently, but that Mother was

6

obligated to get a job and had failed to do so. He did not think it was necessary for him to do another parenting class and claimed he had not understood that he was required to complete a domestic violence class. When shown communications DFS sent him regarding his obligation to do those classes, Father said he did not have time to do the classes.

(12) The Child was doing well in foster care, but his foster family was not an adoption resource. The CASA and the Child's attorney supported termination of Father's parental rights.

(13) On September 11, 2023, the Family Court issued a decision terminating the parental rights of the Child's parents. As to Father, the Family Court found by clear and convincing evidence that Father had failed to plan adequately for the Child's needs under 13 *Del. C.* § 1103(a)(5). Although Father had completed much of his case plan, he faced multiple felony charges for domestic violence, refused to participate in a parenting class for single fathers and a domestic violence class, and was observed sleeping or not appropriately parenting during multiple visits with the Child. The Family Court also found, by clear and convincing evidence, that the Child had been in DFS custody for at least a year and that DFS had made reasonable efforts toward reunification.

(14) The Family Court next considered the best-interest factors under 13 *Del. C.* § 722. The Family Court found that factors 1 (wishes of the Child's parents),

7

3 (relationship of the Child with his parents, relatives, and others in the household), 5 (mental and physical health of all individuals involved),[3] and 8 (criminal history of any party) weighed in favor of denying the petition for termination of Father's parental rights. The Family Court found that factors 2 (wishes of the Child as reflected by the position of the CASA and Child's attorney), 4 (the Child's adjustment to his home, school, and community), 6 (past and present compliance of the parents with their rights and responsibilities to the Child), and 7 (evidence of domestic violence) weighed in favor of terminating Father's parental rights and was in the Child's best interests. Because the Family Court found statutory grounds existed under §1103(a)(5) and that termination would be in the Child's best interests, the court terminated Father's parental rights.

(15) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the Family Court's factual findings to assure that they are supported by the record and are not clearly wrong.[6] The Court will not disturb inferences and deductions supported by the record and the product of an

---

[3] Although the Family Court identified this factor in its conclusion as supportive of granting the petition to terminate Father's parental rights, the Family Court's analysis of this factor actually found that it weighed in favor of denying the petition. Accordingly, we treat this factor as weighing in favor of denial of the petition to terminate Father's parental rights.

[4] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).

[5] *Id.*

[6] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

orderly and logical reasoning process.[7]  If the Family Court correctly applied the law, our review is limited to abuse of discretion.[8]

(16)  Father's arguments on appeal may be summarized as follows:  (i) the Family Court and DFS lacked jurisdiction because he and the Child are members of the Yamassee Creek Nation tribe; (ii) the Family Court erred in relying on misleading information, hearsay, and unproven accusations; and (iii) he can provide for the safety and security of the Child with his family's assistance.  As discussed below, these arguments are without merit.

(17)  We construe Father's first claim as an argument that the Indian Child Welfare Act ("ICWA") deprived the Family Court and DFS of jurisdiction.  The ICWA governs custody and termination of parental rights proceedings when a child is of Native American descent.[9]  Unless a state court is required to transfer a termination of parental rights proceeding, state and tribal courts exercise concurrent jurisdiction over such cases when a Native American child does not reside on the reservation of the child's tribe.[10]

(18)  The ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for

---

[7] *Id.*
[8] *Id.*
[9] 25 U.S.C. §§ 1902, 1903; *Haaland v. Brackeen*, 599 U.S. 255, 263-66 (2023).
[10] *Haaland*, 599 U.S. at 265-66 (citing 25 U.S.C. § 1911(b)).

membership in an Indian tribe and is the biological child of a member of an Indian tribe."[11] An "Indian tribe" is defined as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians."[12] The Secretary of the Interior publishes an annual list of the recognized tribes.[13]

(19) The parties discussed Father's membership in the Yamassee Creek Nation tribe at one of the review hearings and the termination of parental rights hearing. As the Family Court and Father were advised at those hearings, the ICWA did not apply to the proceedings because the Yamassee Creek Nation tribe did not appear on the annual list of recognized Native American tribes.[14] Accordingly, Father's argument that membership in the Yamassee Creek Nation tribe triggered the ICWA and deprived the Family Court and DFS of jurisdiction is without merit.

(20) Father next argues that the Family Court relied on misleading information, hearsay, and unproven accusations. He does not identify any of the

---

[11] 25 U.S.C. § 1903(4).
[12] 25 U.S.C. § 1903(8).
[13] 25 U.S.C. § 5131.
[14] *See, e.g.*, Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024) (listing recognized tribes); Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 88 Fed. Reg. 2112-01 (Jan. 12, 2023) (same); Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 87 Fed. Reg. 4636-02 (Jan. 28, 2022) (same).

allegedly improper information, but refers to Mother's mental health and substance abuse problems. We construe this claim as an argument that the Family Court should have disregarded Mother's testimony concerning his behavior toward her. Both Mother and Father testified at the hearings. Father had the opportunity to cross-examine Mother and Mother's mental health and substance abuse issues were litigated throughout the proceedings. Having heard the parents' live testimony, the Family Court found Mother's description of the March 2023 incident with Father and his subsequent violation of the PFA credible. When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the Family Court, we will not substitute our opinion for that of the Family Court.[15]

(21) Finally, Father argues, as he did below, that he can provide for the Child with the assistance of his family. The Family Court did not err in concluding otherwise. Before the Child came into DFS custody, Father violated multiple safety plans and the Child was found wandering in traffic by himself. By the time of the termination of parental rights hearing, he faced multiple charges for assaulting Mother, had refused to complete a class for domestic violence perpetrators, and had refused to complete a parenting class for single fathers. Father's family members made no effort to visit the Child while he was in DFS custody. There is sufficient

---

[15] *Shimel v. Shimel*, 210 A.3d 732, 2019 WL 2142066, at *2 (Del. May 14, 2019) (ORDER).

11

evidence supporting the Family Court's termination of Father's parental rights based on his failure to plan, that termination of Father's parental rights was in the Child's best interests, and that DFS made reasonable reunification efforts. We find no error in the Family Court's application of the law to the facts and no abuse of discretion in the Family Court's factual findings. Having considered the parties' briefs and the record on appeal, we conclude that Father's appeal is wholly without merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

12